David Coades, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs November 4, 1983, before Judges WILLIAMS, JR., DOYLE and BARRY, sitting as a panel of three.

*Charles B. Swigart,* for petitioner.

*Arthur R. Thomas,* Assistant Chief Counsel, with him, *Robert A. Greevy,* Chief Counsel, *Jay C. Waldman,* General Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE WILLIAMS, JR., August 9, 1984:

This is a petition by David Coades (petitioner) seeking review of an order of the Pennsylvania Board of Probation and Parole (Board) which recommits him to prison as a convicted parole violator to serve backtime. We affirm.

The record presents the following factual scenario. Petitioner was originally sentenced on June 16, 1972 by Judge DeFURIA of the Delaware County Common Pleas Court to a term of two to four years for a Robbery[1] conviction and a consecutive two to four year sentence for a second Robbery conviction. On July 26, 1972 petitioner was sentenced by Judge LAWHORNE of the Delaware County Court of Common Pleas to a term of four to eight years for a third Robbery Conviction to run concurrently with Judge DeFURIA's sentence. Petitioner was subsequently granted parole by the Board and released on parole from the State Correctional Institution at Dallas (SCI-Dallas) on June 5, 1975.

On January 29, 1976 petitioner was arrested by Delaware County authorities following an armed robbery of a Delaware County supermarket and charged with Robbery, Simple Assault,[2] and Theft by Unlawful Taking[3] and was incarcerated in Delaware County Prison. On February 3, 1976 petitioner had the additional charges of Murder,[4] Robbery, Burglary,[5] Con-

---

[1] 18 Pa. C. S. §3701.

[2] 18 Pa. C. S. §2701.

[3] 18 Pa. C. S. §3921.

[4] 18 Pa. C. S. §2502.

[5] 18 Pa. C. S. §3502.

spiracy,[6] Possession of an Offensive Weapon,[7] and Possession of an Instrument of Crime[8] placed against him by Chester County authorities. Petitioner was convicted of the Chester County charges on April 28, 1976 and convicted of the Delaware County charges on June 3, 1976. Petitioner received a sentence of three to six years on the Delaware County charges on June 17, 1977.[9] On June 23, 1977, petitioner was transferred from Delaware County Prison to the State Correctional Institution at Graterford (SCI-Graterford).

On August 4, 1977 petitioner was given a full Board Revocation Hearing at SCI-Graterford. Petitioner, after a discussion with the Board, waived counsel representation and executed a written waiver, Board form PBPP-72. Petitioner informed the Board that while he desired counsel representation, he was unable to procure the presence of counsel, despite his parole agent's assistance, and did not desire to further delay his parole matter. On August 8, 1977 the Board ordered petitioner recommitted as a convicted parole violator on the basis of the new convictions in Chester and Delaware Counties to be reviewed in June 1979.[10]

---

[6] 18 Pa. C. S. §903.

[7] 18 Pa. C. S. §908.

[8] 18 Pa. C. S. §907.

[9] *See also Commonwealth v. Coades*, 260 Pa. Superior Ct. 327, 394 A.2d 575 (1978).

[10] While the recomputed maximum term of petitioner's parole sentence, June 17, 1981, has long since expired, this case is not mooted. Pursuant to Section 21.1(a) of the Act of August 6, 1941, P.L. 861, *as amended*, 61 P.S. §331.21a(a), the Board extended the maximum term of petitioner's parole sentence to deny petitioner credit for time spent at liberty on parole. This had the effect of pushing back the effective date of petitioner's subsequent sentences received in Chester and Delaware County. *See McSorley v. Pennsylvania Board of Probation and Parole*, 76 Pa. Commonwealth Ct. 257, 463 A.2d 1234 (1983).

Petitioner presents two issues on appeal which he contends require reversal of the Board's recommitment order. The first contention is that the Board failed to provide him with a prompt revocation hearing following his new convictions entitling him to a dismissal with prejudice of the parole violation charges. The second contention is that the Board violated his right to counsel representation by proceeding with the August 4, 1977 revocation hearing where he was unrepresented by counsel and did not make an informed, intelligent and voluntary waiver of his right to counsel. Under Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, our scope of review of a Board recommitment order is limited to determining whether necessary findings are supported by substantial evidence, whether the Board committed an error of law and whether petitioner's constitutional rights were violated. *Zazo v. Pennsylvania Board of Probation and Parole,* 80 Pa. Commonwealth Ct. 198, 470 A.2d 1135 (1984).

We shall first deal with petitioner's assertion that the Board failed to provide him with a prompt revocation hearing. We first note that the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471 (1972), held that a parole revocation hearing must be held within a reasonable time after the parolee is taken into custody. *Id.* at 488. Where the violation of parole charged is a new criminal conviction, the event which triggers the reasonable time requirement of *Morrissey* is the verdict or plea of guilty and not the judgment of sentence. *United States ex rel. Burgess v. Lindsey,* 395 F. Supp. 404, 407 (E.D. Pa. 1975). By administrative regulation, Section 71.4(2) of Title 37 of the Pennsylvania Code, 37 Pa. Code §71.4(2), the Board has determined that 120 days is a reasonable time in which to provide a parolee a revocation hear-

ing following a new criminal conviction. 37 Pa. Code §71.4(2), reads in pertinent part as follows:

(2) The hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or *nolo contendere* of the guilty verdict at the highest trial court level except as follows:

(i) If the parolee is confined outside the jurisdiction of the Pennsylvania Bureau of Correction, such as confinement out-of-state, confinement in a Federal correctional institution, or confinement in a *county correctional institution where the parolee has not waived the full Board Revocation Hearing* required by Commonwealth of Pennsylvania ex rel. Rambeau v. Rundle, 455 Pa. 8, 314 A.2d 842 (1973), in which case the final Revocation Hearing shall be held within 120 days of the official verification of the Board of the return of the parolee to a State correctional facility.... (Emphasis added.)

As petitioner correctly points out, his August 4, 1977 revocation hearing at SCI-Graterford was more than 120 days beyond his April 28, 1976 Chester County conviction and his June 3, 1976 Delaware County conviction. However, petitioner had, on May 13, 1976, requested a full Board hearing as evidenced by his written request which is contained in the record. Also, petitioner was incarcerated in Delaware County Prison until June 23, 1977 when he was received at SCI-Graterford. Under 37 Pa. Code §71.4(2)(i), the 120-day period does not commence for parolees housed in county prisons *and* who request full Board hearings until the parolee is received at a State correctional facility.[11] Petitioner was given his full Board Revo-

---

[11] This classification of county-confined parolees has been upheld as reasonable upon challenge on due process and equal protec-

cation Hearing at SCI-Graterford on August 4, 1977, forty-two days after his reception at SCI-Graterford from Delaware County Prison and well within the 120-day time limit of 37 Pa. Code §71.4(2). Petitioner's revocation hearing was, therefore, timely.

Petitioner next argues that the Board violated his right to counsel.[12] Petitioner contends that he desired counsel to represent him before the Board but could not obtain counsel. While petitioner admits signing a waiver of counsel representation, he argues it was neither informed nor voluntary and, therefore, ineffective.

It is now well-settled that under Pennsylvania law a parolee is entitled to assistance of counsel at the Board's revocation hearings and to free counsel if indigent. *See Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973); *Commonwealth v. Tinson*, 433 Pa. 328, 249 A.2d 549 (1969); *Passaro v. Pennsylvania Board of Probation and Parole*, 56 Pa. Commonwealth Ct. 32, 424 A.2d 561 (1981). However, prior to determining whether petitioner made a valid waiver of his right to counsel, we must first examine the nature of this right so that we may apply the proper standard of review.

We first note that a parolee's right to assistance of counsel at a Board revocation hearing precedes the

tion grounds. *See Blair v. Pennsylvania Board of Probation and Parole*, 78 Pa. Commonwealth Ct. 41, 467 A.2d 71 (1983), *cert. denied* U.S.    , 80 L.Ed. 2d 830 (1984).

[12] We are compelled to note that petitioner did not initially raise this issue in his original pro se petition for review filed in December 1978. Rather, the issue was first raised by counsel appointed to represent petitioner in the Amended Petition for Review. We consider this issue on the merits in accordance with the rationale expressed in *Brown v. Pennsylvania Board of Probation and Parole*, 70 Pa. Commonwealth Ct. 597, 453 A.2d 1068 (1982), rather than considering the issue waived under Section 703 of the Administrative Agency Law, 2 Pa. C. S. §703.

limited right under the Federal Constitution acknowledged by the United States Supreme Court in *Gagnon v. Scarpelli,* 411 U.S. 778 (1973). In 1969, our Supreme Court in *Commonwealth v. Tinson* first held that a parolee is entitled to assistance of counsel at parole revocation proceedings. The *Tinson* Court held that a parole revocation proceeding is a "critical stage" of a criminal proceeding at which counsel was constitutionally required to protect the substantial rights of a criminal accused. 433 Pa. at 332, 249 A.2d at 551. The *Tinson* Court's holding that a parole revocation is a "critical stage" of a criminal proceeding was based upon the United States Supreme Court's holding in *Mempa v. Rhay,* 389 U.S. 128 (1967) where the Supreme Court held counsel was constitutionally required at a hearing where probation may be revoked and sentence entered.[13] *Id.* at 134.

In 1972 our Supreme Court reaffirmed its holding in *Tinson* in its decision in *Commonwealth ex rel. Rambeau v. Rundle* and found counsel was crucial in presenting mitigating circumstances, if any were existent, to the Board. 455 Pa. at 18, 314 A.2d at 847. However, prior to our Supreme Court's decision in

---

[13] We note the distinction between a parole revocation and a probation revocation hearing is that a parolee's sentence may not be changed by the Board. *See* Section 17 of the Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. §331.17; *Commonwealth ex rel. Haun v. Cavell,* 190 Pa. Superior Ct. 346, 154 A.2d 257 (1959), *cert. denied,* 363 U.S. 855 (1960). A revocation of parole does not alter the original judicially-imposed sentence but merely directs completion of that sentence. *See McClure v. Pennsylvania Board of Probation and Parole,* 75 Pa. Commonwealth Ct. 176, 461 A.2d 645 (1983). This distinction was deemed important enough by the United States Supreme Court in *Gagnon v. Scarpelli* so as to compel the Court to distinguish the facts of that case where the probationer had a sentence *already imposed* by the trial court which was suspended during probation and the facts of *Mempa v. Rhay* where sentence *would be* imposed only if probation was revoked. *See* 411 U.S. at 781.

*Rambeau*, the United States Supreme Court handed down its decision in *Morrissey v. Brewer* in which the Supreme Court specifically held that a parole revocation proceeding is *not* part of a criminal prosecution and that parolees are not entitled to the same constitutional guarantees and safeguards as is a criminal accused. 408 U.S. at 480. The *Rambeau* Court was aware of the *Morrissey* decision but only Justices POMEROY and EAGEN noted that *Morrissey* cast a grave doubt on the continuing validity of resting the parolee's right to counsel on *Mempa v. Rhay*. Justice POMEROY, in his concurring opinion, noted that the *Tinson* holding giving parolees an absolute right to counsel was not required as a matter of federal constitutional law.[14] 455 Pa. at 24, 314 A.2d at 850 (POMEROY, J., concurring). Justice EAGEN, however, strongly disagreed with the Court's holding that counsel was required at all revocation hearings and read the Supreme Court's holding in *Morrissey* as holding counsel is not always constitutionally required at revocation hearings where the only violation of parole is a new criminal conviction. *See* 455 Pa. at 26-28, 314 A.2d at 851-52 (EAGEN, J., concurring and dissenting).

Shortly after our Supreme Court decided *Rambeau*, the United States Supreme Court handed down its decision in *Gagnon v. Scarpelli* where the Supreme Court addressed the precise issue concerning the right to counsel as was before the *Rambeau* Court. In *Gagnon* the Supreme Court expressly rejected the idea that a parolee has an absolute constitutional right to counsel representation at a parole revocation hearing. Justice POWELL, writing for the Court, recognized that there existed situations where the presence of counsel

---

[14] Justice POMEROY hinted that the *Tinson* right to counsel at parole revocation hearings may be found in the state constitution. 455 Pa. at 24, n. 4, 314 A.2d at 850, n. 4 (POMEROY, J., concurring).

at parole revocation hearings would be both undesirable and unnecessary. The only occasions whereby the right to counsel at parole revocation hearings is of federal constitutional magnitude is where fundamental fairness under the due process clause of the Fourteenth Amendment requires counsel. 411 U.S. at 790. In cases such as petitioner's where the only violation of parole charged is a new criminal conviction, the *Gagnon* Court held counsel is constitutionally required only where there is *substantial* justification or mitigation which would render revocation inappropriate *and* where the justification and mitigation is *complex or otherwise difficult to develop or present. Id.* at 790-91 (Emphasis added).

The record shows that petitioner's circumstances clearly do not meet the *Gagnon* requirements for petitioner's right to counsel being of constitutional magnitude under the due process clause of the Fourteenth Amendment. The only parole violation charges brought against petitioner were his new criminal convictions in Chester and Delaware Counties. As those new convictions were a matter of public record, in order to have his right to counsel rise to being of constitutional magnitude under *Gagnon,* petitioner would have to allege that there existed substantial mitigating circumstances or justification for the offenses which would render revocation inappropriate and that the mitigation or justification is complex or otherwise difficult to present. *See Gagnon,* 411 U.S. at 790. Here, no such assertion of mitigation or justification was made or briefed by petitioner or counsel. Petitioner was convicted of new criminal offenses in courts of record. That was the only parole violation charge against petitioner. The fact of those convictions, if proven by the Board through proper documentation, is conclusive for purposes of a parole revocation as it is clear that a parolee cannot use a pa-

role revocation hearing to relitigate issues determined against him in other forums. *Morrissey*, 408 U.S. at 490. Accordingly, we find petitioner's right to counsel in this case was not of constitutional magnitude under the due process clause of the Fourteenth Amendment. Rather, the factual scenario presented in this case, where petitioner has sustained serious new criminal convictions, fits the example outlined by Justice Powell in *Gagnon* of an instance where the State need not ordinarily provide a parolee with counsel. *See* 411 U.S. at 791.

That conclusion, however, does not end our inquiry. We must now determine whether petitioner's right to counsel was of constitutional magnitude under the Pennsylvania Constitution. We first acknowledge that States may provide enhanced protections for their citizens in State Constitutions in excess of those provided under the Federal Constitution. *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978); *Gundy v. Pennsylvania Board of Probation and Parole*, 82 Pa. Commonwealth Ct. 618, 478 A.2d 139 (1984). We also duly note the passing comment of Justice Pomeroy in his concurring opinion in *Rambeau* that a parolee's right to counsel may be based upon the Pennsylvania Constitution. 455 Pa. at 24, n. 4, 314 A. 2d at 850, n. 4 (Pomeroy, J., concurring). Our Supreme Court's latest pronouncement on the issue of a parolee's right to counsel did not mention the *Gagnon* decision or the nature of that right other than to restate the *Tinson* rationale for counsel being required. *See Bronson v. Pennsylvania Board of Probation and Parole*, 491 Pa. 549, 560, 421 A.2d 1021, 1026 (1980), *cert. denied*, 450 U.S. 1050 (1981). We will, therefore, treat the question of whether a parolee's right to counsel is found in our State Constitution as one of first impression.

The applicable provision of the Pennsylvania Constitution is Article I, Section 9, which reads as follows:

§*9.  Rights of accused in criminal prosecutions*

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land.

This provision of the Declaration of Rights of the Constitution of 1968 was adopted verbatim from the Constitutions of 1874, 1838 and 1790. It is derived from a similar provision of the Constitution of 1776.

We first note that Article I, Section 9, deals exclusively with the rights of defendants in *criminal* prosecutions. As we have already noted, a parole revocation proceeding is *not* part of a *criminal* prosecution, *Morrissey; Hughes v. Pennsylvania Board of Probation and Parole*, 81 Pa. Commonwealth Ct. 87, 473 A.2d 225 (1984), although our Supreme Court has held parole administration is included under the broad penumbra of the criminal justice system. *See Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371 (1983). On its face, Article I, Section 9, would not seem to apply to the Board's parole revocation proceedings which are civil administrative hearings rather than criminal prosecution. *Cf. Gundy.* (Board revocation hearings are administrative in nature to which principles of administrative due process apply).

The fact that parole revocation hearings are civil as opposed to criminal proceedings does not preclude a parolee's right to counsel being of constitutional magnitude as a requirement of due process under our State Constitution. However, in reviewing the decisions of our Supreme Court which interpret our State Constitution, we feel the due process guarantees under our constitution are no greater than those afforded by the Federal Constitution. Therefore, petitioner's right to counsel, under these circumstances utilizing the *Gagnon* test, is not of constitutional magnitude under either the Pennsylvania or Federal Constitutions. Accordingly, we hold that the strict test for determining whether a criminal defendant made a valid knowing and voluntary waiver of the right to counsel requiring an extensive on-the-record colloquy between the Court and the defendant need not be met in the case of a Board parole revocation proceeding. *See* Pa. R. Crim. P. 318; *Commonwealth v. Fowler,* 271 Pa. Superior Ct. 138, 412 A.2d 614 (1979), *appeal after remand,* 275 Pa. Superior Ct. 544, 419 A.2d 34 (1980).[15]

Rather than being a right guaranteed by either the Pennsylvania or the Federal Constitutions, a parolee's right to counsel is based in statutory law. Section 6(a)(10) of the Act of December 2, 1968, P.L. 1144 (Public Defender Act), 16 P.S. §9960.6(a)(10), specifically lists as one of the duties of the public defender the furnishing of legal counsel to indigents in probation and parole proceedings and revocations. This statutory provision was specifically noted by the *Tinson Court,* 433 Pa. at 333, n. 2, 249 A.2d at 552, n. 2. We also take due note of Section 502 of the Adminis-

---

[15] The Superior Court in *Fowler* also noted that the parolee's right to counsel under Pennsylvania law is greater than that afforded under the Federal Constitution but the Court did not discuss the basis of that greater right. 271 Pa. Superior Ct. at 142, n. 3, 412 A.2d at 615, n.3.

trative Agency Law, 2 Pa. C. S. §502, which gives all parties the right to counsel representation before a Commonwealth agency. Our Supreme Court has held the Board to be a Commonwealth agency. *Bronson.* 491 Pa. at 556-7, 421 A.2d at 1024-5. Additionally, the Board's own administrative regulations give parolees the right to counsel representation. *See* 37 Pa. Code §§71.2(1)(iv); 71.2(12)(v); 71.4(3)(ii); 71.4(5)(iv); and 71.5(h) & (i).

Having determined the foundations in Pennsylvania law of the parolee's right to counsel, we must now determine whether the Board's procedure for allowing a parolee to waive counsel is sufficient to satisfy our view of fundamental fairness and, if so, whether the Board followed that procedure in petitioner's case. The Board's regulations require the Board to notify the parolee, both orally and in writing, of the right to retain counsel, the right to free counsel if indigent, and provide the parolee with the name and address of the local public defender. *See* 37 Pa. Code §71.4(3) (ii). The Board is also required to assure the parolee that he will not be penalized in any way for requesting counsel. *See* 37 Pa. Code §71.4(3)(iii). The Board furnished this information to petitioner at the time it notified him of the violation charges and the date, time and place of the revocation hearing. The form used by the Board, PBPP 340, was adopted in June 1977 and has this information printed on the reverse side.[16] The

---

[16] The revocation hearing notice appearing on the reverse side of the form PBPP 340 reads as follows:

*Revocation Hearing Notice (New Criminal Conviction)*

The detainer presently lodged against you by the Pennsylvania Board of Probation and Parole is a result of your new conviction in a court of record for the offense(s) listed on the reverse side.

A revocation hearing will be conducted by a Member or Members of the Board or their representatives to determine whether or not your parole should be revoked.

Certificate of the Chairman states that a form PBPP 340 was prepared and forwarded to petitioner on July 15, 1977 regarding the hearing of August 4, 1977. Additionally, 37 Pa. Code §71.4(5)(iv) requires the Board or its hearing examiner ensure that the parolee is aware of the right to counsel, to free counsel if indigent, and that the parolee will not be penalized for requesting counsel. If the parolee appears without counsel, desires counsel and is unwilling to waive counsel, the Board is required to terminate the proceeding and reschedule the hearing. The Board's regulations do not require this counseling be done on the record and in this case most of the counseling of the parolee regarding the parolee's respective rights at the parole hearing was accomplished by the parole agent and the institutional parole representative at SCI-Graterford as shown by the portion of the tran-

---

*At this hearing you have the right to be represented by counsel, and the right to free counsel if you are unable to afford to retain counsel of your own choice. The name and address of the Public Defender is listed on the reverse side. You will, in no way, be penalized for requesting counsel.* You also have the right to have this hearing held before a quorum of the Board. You will have the right to speak at this hearing, to have voluntary witnesses appear on your behalf, to present evidence by affidavit, and to present other evidence in your defense.

Following the hearing the Board will make a determination as to whether your parole should be revoked, you and your attorney will be notified of the Board's decision. If your parole is revoked, it will result in a loss of time spent at liberty on parole. (Emphasis added.)

The name and address of the applicable public defender is listed on the front page of the notice. The record shows that petitioner was provided with the name and address of both the Delaware County and Montgomery County public defender by the Board. The form used by the Board, PBPP 27, to notify petitioner of earlier parole hearings contains the same language pertaining to the right to counsel.

script reproduced later in this opinion. The Board utilizes a waiver of representation by counsel form, PBPP 72, to document the parolee's waiver of the right to counsel. This is the form which petitioner signed at his hearing at SCI-Graterford on August 4, 1977 and reads as follows:

### Waiver of Representation By Counsel

Having been fully advised of my right to counsel of my choice to represent me at a hearing before a Board Member or Members, or their representative, and of my right to appointed counsel if I cannot afford counsel of my choice, I hereby waive this right and request that my hearing be held without benefit of counsel.

This waiver is made of my own free will, without threat or coercion.

We wish to stress that this counseling and inquiry regarding the parolee's right to counsel need not be accomplished on the record. As long as the Board follows its regulations regarding informing the parolee of the right to counsel, provides the parolee with a form PBPP 340 containing the written notice of the right to counsel as well as the name and address of the applicable public defender, and documents the waiver of counsel by a form PBPP 72 at the time of the hearing which becomes part of the record, the parolee's waiver of counsel will be deemed informed and voluntary and given effect. The fact that a portion of this process was done on the record here, however, facilitates our review of petitioner's challenge.

A review of the record satisfies us that the Board followed its provisions for informing parolees of their right to counsel and for effectuating a waiver of that right and is sufficient to satisfy our notions of fundamental fairness under Pennsylvania law. The portion

of the exchange between petitioner and the Board at the August 4, 1977 revocation hearing convinces us that petitioner made an intelligent and voluntary waiver of his right to counsel. The exchange between petitioner and the Board went as follows:

Q. This is a Full Board Revocation Hearing on David Coades, Parole No. 2984-J, held at the State Correctional Institution at Graterford, on August 4, 1977. Also present is Agent III, Fred Angelilli, from the Chester District Office. Mr. Coades, do you swear that the testimony given before this Board to be the truth, the whole truth, and nothing but the truth?

A. Yes, I do.

Q. Mr. David Coades, you are being afforded today, a Parole Revocation Hearing, and as per your request, this Parole Revocation Hearing is being heard before the Full Board, and the reason for the Parole Revocation Hearing is that in Delaware County Court, on June 17, 1977, you were sentenced to a term of 3 to 6 years on Bill #837, 1976, charging Robbery, Simple Assault, and Theft by Unlawful Taking. You also have been convicted in Chester County Court on charges of Murder, Conspiracy, Burglary, Robbery, Prohibitive Offensive Weapon, and Possession of Instrument of Crime. You plead Not Guilty, but you were found Guilty and sentence is still deferred on that charge. Is that correct?

A. Yes, it is.

Q. As a result of these convictions, as I previously said, you are being afforded a Parole Revocation Hearing, and as per your request, the Parole Revocation Hearing is being heard before the Full Board. We have present, Mr. Descano, Mr. Jefferson, and Miss Dean.

Now, you have had initially stated that you wanted to be represented by the Public Defender's Office from Delaware County.

A. Yes, Sir.

Q. I informed you the other day that the Public Defender from Delaware County would not be present at this hearing, and at that time you told me that you would waive representation by Counsel but you would not sign the waiver until you appear before the Board. Is that correct?

A. Yes, Sir.

Q. Are you willing to sign a waiver of representation by Counsel, in fact telling the Board that you will appear before them without an Attorney to represent you?

A. Yes, Sir.

. . . .

Q. Before you proceed, Mr. Coades, you have received a notice stating what the charges were going to be in terms of this hearing,— what the Board was going to be dealing with. We did place violation of condition #6 on that notice. We are not going to be seeing you as a Technical Parole Violator today,—just simply on those charges which have been read to you. O.K.?

A. Yes, Ma'am.

Q. Just on the conviction.

A. The conviction.

Q. Yes. I'd like for the record, Mr. Coades, you were seen back by the Board in 1976, is that correct?

A. Yes, I was.

Q. Yes, and at that time, you had wanted to be represented by Counsel?

A. I did.

Q. O.K. In the month subse . . . or after you saw the Board, there were attempts made by our office, Mr. Angelilli, to try to secure Counsel. Am I correct in stating that it was always your quest [sic] or thought that you wanted to have Counsel up until this time and you made that request to Mr. Angelilli [Parole Agent]?

A. That is correct. I wanted Counsel this time also, but I didn't want to hurt or delay my parole grant.

. . . .

The exchange between petitioner and the Board shows that petitioner was aware of the parole violation charges against him, the impact those charges could have upon his parole, his right to counsel representation, his right to free counsel if indigent, and the importance of having counsel represent him. At the end of the exchange petitioner signed the Waiver of Representation of Counsel form indicating it was his desire to proceed with the hearing rather than delay the matter further to obtain the services of the public defender.[17] The exchange between petitioner and the Board also indicates petitioner's parole agent had actively assisted petitioner in attempting to secure the services of the Delaware County Public Defender.

---

[17] We distinguish petitioner's circumstances from those of the Parolee in *Brown v. Pennsylvania Board of Probation and Parole*, 70 Pa. Commonwealth Ct. 597, 453 A.2d 1068 (1982), in which we held the Board erred in denying the parolee's request for a continuance to obtain counsel where the parolee was unrepresented and desired counsel and refused to waive the right to counsel. Here, petitioner did not request a continuance but chose to waive counsel and proceed with the hearing. We note that petitioner was represented by the Delaware County Public Defender in his Delaware County criminal matter and the resulting appeal, *See Commonwealth v. Coades, supra* n. 9.

Petitioner further argues that he was never notified by the Board of his right to be represented by the Public Defender of *Montgomery* County as at the time of his revocation hearing he was confined at SCI-Graterford which is in Montgomery County. Petitioner's 1977 revocation hearing precedes by well over three years our decision in *Passaro* which imposed that obligation upon the Montgomery County Public Defender. We do note that the Board, as evidenced by copies of notices of a revocation hearing contained in the record, did provide petitioner with the name and address of both the Delaware County and Montgomery County Public Defender. The Board fulfilled its obligation to petitioner by providing that information. It was not and is not obligated to procure counsel for petitioner. *Passaro.* The Board's alleged failure to stress to petitioner an obligation on the part of the Montgomery County Public Defender which would not arise for another three and one-half years does not make petitioner's waiver of counsel in August 1977 any less informed or less voluntary. We will judge the Board's actions on the basis of the standards as they existed at the time and not with the benefit of hindsight requiring the Board to predict future developments in the law at its peril. *Cf. Commonwealth v. Triplett,* 476 Pa. 83, 89-90, 381 A.2d 877, 881 (1977) (court will not impose upon trial counsel the qualities of a seer and require him to predict future developments in the law); *Commonwealth v. Carr,* Pa. Superior Ct. , , 466 A.2d 1030, 1034 (1983) (trial counsel not ineffective for failing to foresee rule adopted five months after trial); *Commonwealth v. McIntosh,* 291 Pa. Superior Ct. 352, 356, 435 A.2d 1263, 1265 (1981) (counsel's stewardship must be examined by standards existing at time of counsel's action). We hold petitioner's actions evidence a clear, intelligent and voluntary waiver of his right to counsel.

The Board did all that was required of it and more to stress to petitioner the importance of counsel and to assist petitioner in obtaining counsel. We have held on several occasions that the Board is under no obligation to actually provide counsel for indigent parolees.[18] *See Passaro; Tate v. Pennsylvania Board of Probation and Parole,* 40 Pa. Commonwealth Ct. 4, 396 A.2d 482 (1978).

Finding the Board respected petitioner's constitutional rights and committed no errors of law, we affirm the Board's recommitment order.[19]

### ORDER

AND Now, the 9th day of August, 1984, the order of the Pennsylvania Board of Probation and Parole at Parole No. 2984-J, dated August 8, 1977, is hereby affirmed.

---

[18] Section 7 of the Public Defender Act, 16 P.S. §9660.7 grants to the court of common pleas the power to appoint counsel for indigents where the public defender cannot represent a particular client. There is no mention in the record that petitioner ever made application to any common pleas court for appointment of counsel under 16 P.S. §9660.7. The court of common pleas of the jurisdiction to which a parolee is subject is authorized by this section to appoint counsel. Following *Passaro* this court would be the common pleas court of the county in which the parolee was confined. If that county was not the county of commitment, the county of commitment would be obligated under 16 P.S. §9660.10a to reimburse the confining county for the costs of such representation.

[19] This matter was assigned to this Judge on June 13, 1984.

---

DISSENTING OPINION BY JUDGE BARRY:

I dissent.

*Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973), involved a constitutional challenge to the procedures by which the Commonwealth revoked parole and recommitted a parolee convicted

of a crime committed while on parole. The Pennsylvania Supreme Court held, in a 5-2 vote on this issue, that parolees are entitled to representation by counsel at parole revocation hearings. It reasoned that a parolee is entitled to assistance of counsel because a parole revocation hearing involves critical rights of a convicted parole violator. The court, furthermore, noted that it had recently extended the same rights to technical parole violators, *Commonwealth v. Tinson,* 433 Pa. 328, 249 A.2d 549 (1969), and that, similarly, aid of counsel might be as crucial to a technical parole violator as to a convicted parole violator. *Rambeau* has been recognized in various other contexts such as in *Commonwealth v. Fowler,* 271 Pa. Superior Ct. 138, 412 A.2d 614 (1979), where the court set forth certain guidelines to establish whether a parolee's waiver of the right to counsel was voluntary and informed, and in *Passaro v. Pennsylvania Board of Probation and Parole,* 56 Pa. Commonwealth Ct. 32, 424 A.2d 561 (1981), where we held that the public defender of the county in which an indigent parolee is incarcerated must, upon proper request provide counsel for a parole revocation hearing.

In *Bronson v. Pennsylvania Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied,* 450 U.S. 1050 (1981), the Pennsylvania Supreme Court's most recent pronouncement on this issue involved an indigent parolee, convicted on new charges, who alleged, in part, that he was improperly denied assistance of counsel at a parole revocation hearing. Citing both *Rambeau* and *Tinson,* the Pennsylvania Supreme Court held that counsel is required at a parole revocation hearing to insure the *constitutional* validity of that hearing.

I believe these cases demonstrate that the Pennsylvania Supreme Court recognizes the parolee's right to counsel under our state constitution. In this re-

spect, the Pennsylvania Constitution provides protections not contained in the United States Constitution. *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). *Gagnon* held that counsel is constitutionally required where there is substantial justification or mitigation of the parole violation, which would render revocation inappropriate or there may be complex or difficult defenses to present. With an opportunity to expressly narrow its holdings in *Rambeau* and *Tinson* by adopting the *Gagnon* rationale, the Pennsylvania Supreme Court in *Bronson* chose otherwise. This decision binds us.

The Board has recognized this rule of law and promulgated rules which explicitly recognize that a *convicted* parole violator is entitled to appointed counsel at his parole revocation hearing. 37 Pa. Code §71.4 (3)(ii).

I believe the petitioner argues correctly that his right to be represented by counsel has been violated because his waiver of the right to counsel was not informed and voluntary. Examination of the colloquy between the Board and the petitioner indicates that petitioner did not have the requisite understanding to knowingly, intelligently, and voluntarily waive his right to counsel. The Board, however, could have assured that petitioner's waiver was voluntary and informed and, therefore, valid had it made a more penetrating and comprehensive inquiry into the circumstances before the waiver was tendered.

I, moreover, believe that we should model guidelines for valid waiver of counsel in parole revocation hearings after *Fowler*. What good is a right if the system doesn't provide for its protection? The parolee must understand the nature of his parole violation, the consequence of his conduct, the possible justification or mitigation of the parole violation which would render revocation inappropriate and which may be complex to present or develop, and all other facts

necessary for comprehension of the entire proceeding. I do not believe that adoption of these guidelines would imply that the Board's proceedings are part of a criminal proceeding. Nevertheless, as the Supreme Court stated in *Commonwealth v. Brown*, 503 Pa. 514, 526, 469 A.2d 1371, 1377 (1983):

> Most important is that it must be remembered parole and probation as well as the criminal trial fall under the penumbra of the criminal justice system. All of the components of that system are designed to achieve the basic objectives of the system. Each segment of the system intermeshes with the whole to achieve the overall objectives of the system, and the efficiency of the system is dependent upon the harmony existing between the parts. Thus to suggest that the policies of one segment seek a purpose inimical to the policies of the others misconstrues the relationship of the various components among themselves.

For these reasons, I would hold that, since the record does not indicate that petitioner effectively waived his right to counsel, the case should be remanded to the Board for the appointment of counsel to assist petitioner should he be unwilling to waive the right to counsel following an effective on-the-record colloquy.