IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin Colbert,      :
       Petitioner      :
     :
     v.      :    No. 654 C.D. 2020
     :    SUBMITTED: April 9, 2021
     :
Pennsylvania Parole Board,      :
       Respondent      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED: May 17, 2021

Petitioner Justin Colbert petitions for review of Respondent Pennsylvania Parole Board's May 29, 2020 order, through which the Board affirmed its July 2, 2018 decision to recommit Colbert to serve 24 months of backtime as a convicted parole violator (CPV), award him no credit for time served at liberty on parole, and recalculate the maximum date on his original state prison sentence as December 1, 2021. After thorough review, we vacate the Board's May 29, 2020 order and remand this matter to the Board for further proceedings consistent with the following opinion.

## I. Facts and Procedural History

On August 3, 2009, Colbert was sentenced by the Court of Common Pleas of Indiana County to 27 to 72 months in state prison after pleading guilty to 1 count of possession with intent to deliver. Certified Record (C.R.) at 1. Colbert was subsequently paroled on January 27, 2011, at which point the maximum date on his 2009 sentence was October 3, 2014. *Id.* at 4-8.

On November 15, 2013, federal agents from the Drug Enforcement Agency (DEA) arrested Colbert in Essex County, New Jersey, in connection with a broader DEA investigation of heroin trafficking within the New York City metro region. *Id.* at 14-15. On November 18, 2013, the Board issued a warrant for Colbert's arrest, which it later rescinded on October 6, 2014, followed by a declaration on October 8, 2014, that Colbert had been "delinquent for control purposes" from the date of his arrest in Essex County onward. *Id.* at 12, 16-17. Colbert then pled guilty on October 9, 2014, in the United States District Court for the District of New Jersey to 1 count of possession with intent to deliver 100 or more grams of heroin, and, on January 16, 2015, was sentenced to 60 months in federal prison, along with 60 months of post-release supervision. *Id.* at 18-22. In response to this conviction, the Board issued a new warrant for Colbert's arrest on January 23, 2015. *Id.* at 27. Colbert was released from federal custody on March 27, 2018, and was transferred to the State Correctional Institution at Fayette (SCI-Fayette) that same day, where he was held pursuant to the Board's warrant. *Id.* at 30, 98-102.

The Board then began the process of determining whether to revoke Colbert's parole. On May 1, 2018, the Board notified Colbert that it intended to convene a hearing to consider the matter three weeks hence. *Id.* at 31-32. On May 22, 2018, the date of the hearing, Colbert requested that it be continued to the next available date, in order to allow him to obtain a lawyer. The Board granted this request that same day. *Id.* at 33, 40. On June 4, 2018, the date of his rescheduled hearing, Colbert stated, in writing, his express refusal to waive his right to counsel at the rescheduled Board hearing. *Id.* at 35. At the start of the Board's hearing that same day, Hearing Examiner Timothy Douglas made the following statement:

> Before going on record we talked about the status of the public defender here at SCI[-]Fayette. The public defender

2

does not show up despite our numerous requests for them to do so. We did continue this hearing back on [May 22, 2018,] to the next available date and time to secure counsel, to review the case with counsel and Mr. Colbert was not able to obtain counsel and he is not willing to waive counsel. He has refused to sign [a waiver] form. However, we are going to go ahead and proceed with this hearing today and move forward.

*Id.* at 40-41. During the course of this hearing, Colbert expressed his desire to be assisted by counsel and repeatedly made clear that he was unfamiliar with the parole revocation process, and that he doubted he could defend himself competently.

> [In response to the hearing examiner asking Colbert whether he wished to question a Board witness:] That's what I'm saying I don't know if it would be a question to him or to the proceeding itself. That's kind of why I wanted an attorney because I'm not exactly sure how this proceeding should go.
>
> . . . .
>
> [In the midst of Colbert arguing why his parole should not be revoked:] I'm kind of not in full understandings [sic] of why I'm here because I understand from a revocation hearing is to determine if it violated [sic], shall be brought back into the institution. That's kind of the way I read it before. Haven't really been able to get a full understanding because I'm limited to only 2 hours in a law library a week, but I try to do as much as I could [sic].
>
> . . . .
>
> I still got to say and like I said me not being an attorney I don't have a full knowledge and understanding [sic]. So I'm kind of lost to as [sic] why I'm here.
>
> . . . .
>
> [In response to the hearing examiner asking Colbert whether he wished to enter certain documents into the hearing record:] I was trying to read over this. I didn't have enough time. This is my first time I actually seen [sic] this supervision history. And I wanted to kind of talk about that.
>
> . . . .

> I don't know if this would be necessarily legal. Can I submit that?
>
> . . . .
>
> [In response to the hearing examiner asking Colbert whether there was anything else he wished to discuss:] I guess I just wanted to put on the record that like I said being that I don't have a full understanding of this proceeding, but I also wanted to talk about my history while on parole. Because I don't want to be - in any event where I could possibly be wrong on the evidence that I presented being that I'm not an attorney and I don't fully understand any of it.

*Id.* at 42-43, 45-46, 50-51. On July 2, 2018, the Board issued its decision, through which, as already mentioned, it recommitted Colbert as a CPV to serve 24 months of backtime on his August 2009 sentence, awarded him no street time credit, and recalculated the maximum date on his August 2009 sentence as December 1, 2021. *Id.* at 103-06.

Colbert administratively challenged the Board's decision on July 31, 2018. Therein, Colbert argued that the Board had violated his rights by forcing him to appear *pro se* and proceeding with the June 4, 2018 hearing, in spite of his repeated requests to be represented by counsel, had unlawfully extended his August 2009 sentence, and had failed to properly credit him for street time and time served in presentence detention. *Id.* at 107-11, 122-23. Nearly two years later, on May 29, 2020, the Board denied Colbert's administrative challenge, stating that it had neither failed to give proper time credit towards his August 2009 sentence, nor extended the length of that sentence; inexplicably, however, the Board failed to address *to any degree* Colbert's argument regarding the absence of counsel at the June 4, 2018 hearing. *Id.* at 128-29. Colbert then appealed the Board's denial to our Court.

4

## II. Discussion

Colbert raises several arguments for our consideration.[1] First, Colbert claims that the Board violated his rights by holding the June 4, 2018 hearing in spite of his requests to be provided with and represented by counsel. Colbert's Br. at 1. Second, Colbert argues, for the first time, that the Board erroneously failed to remove him from federal custody, so that he could serve time on his August 2009 state sentence before serving his January 2015 federal sentence. *Id.* at 2. Finally, Colbert maintains that the Board erred by declining to award him credit for time served at liberty on parole. *Id.* at 3-4.[2]

We need only address Colbert's first argument to resolve his appeal. Pursuant to Section 6(a)(10) of what is commonly called the Public Defender Act,[3] public defenders have a statutory duty to provide needy persons with legal representation in "[p]robation and parole proceedings and revocation thereof." 16 P.S. § 9960.6(a)(10). Furthermore, both Section 502 of the Administrative Agency Law, 2 Pa. C.S. § 502, and the Board's own administrative regulations give parolees the

---

[1] Under Section 704 of the Administrative Agency Law, our standard of review in this matter is limited to determining whether the Board violated a petitioner's constitutional rights, committed an error of law, or made findings of fact that were not supported by substantial evidence. 2 Pa. C.S. § 704.

[2] We note that more than 24 months have elapsed since the Board's decision that revoked Colbert's parole and ordered him to serve backtime, as well as that there is no evidence showing that Colbert is still incarcerated within our Commonwealth's prison system. *See* Colbert's Br., Proof of Service at 1 (listing Colbert's mailing address as a private residence). Thus, Colbert has completed the backtime imposed upon him by the Board and is no longer in its custody. Nevertheless, as the recalculated maximum date on Colbert's sentence is December 1, 2021, this matter is not moot. *See Taylor v. Pa. Bd. of Prob. & Parole*, 746 A.2d 671, 674 (Pa. Cmwlth. 2000) ("[T]he expiration of a parolee's maximum term renders an appeal of a Board revocation order moot.").

[3] Act of December 2, 1968, P.L. 1144, *as amended*, 16 P.S. § 9960.6(a)(10).

right to have such representation in revocation proceedings. *Coades v. Pa. Bd. of Prob. & Parole*, 480 A.2d 1298, 1305 (Pa. Cmwlth. 1984). "[I]ndigent parolees are [thus] entitled to the assistance of counsel both at parole revocation hearings and in the prosecution of subsequent appeals as of right[,]" which must be provided by the county in which the parolee is incarcerated. *Blair v. Pa. Bd. of Prob. & Parole*, 518 A.2d 899, 900 (Pa. Cmwlth. 1986); *accord Com. v. Tinson*, 249 A.2d 549, 552 n.2 (Pa. 1969). A parolee may waive their right to counsel in a Board proceeding. *Coades*, 480 A.2d at 1305-08. However, per the Board's administrative regulations, "[i]f the parolee appears without counsel, desires counsel and is unwilling to waive counsel, the Board is required to terminate the proceeding and reschedule the hearing." *Id.* at 1305; *accord Roblyer v. Pa. Bd. of Prob. & Parole*, 609 A.2d 884, 886 (Pa. Cmwlth. 1992).[4]

Applying this body of law to the matter at hand, we conclude that the Board's July 2, 2018 order was void *ab initio*. It is indisputable that Colbert was entitled to, and desired, legal representation at his parole revocation hearing. Despite this, the Fayette County Office of the Public Defender inexplicably ignored repeated requests that it provide Colbert with counsel. C.R. at 40-41. Hearing Examiner Douglas further compounded this grievous error by nevertheless proceeding with the June 4, 2018 hearing, despite Colbert's clear refusal to sign a waiver form. *Id.* The Board

---

[4] On this point, the Board's administrative regulations state, in pertinent part:

> If a parolee appears without counsel at a revocation hearing, it shall first be determined whether the parolee understands the right to retain counsel, the right to free counsel if unable to afford counsel and that there is no penalty for requesting counsel. If the parolee then wishes to exercise the right to counsel, the panel or examiner shall terminate the proceedings and the revocation hearing shall be rescheduled.

37 Pa. Code § 71.4(5).

then added to this cascading series of blunders in several ways. First, for unknown reasons, it took roughly 22 months to respond to Colbert's administrative challenge. *Id.* at 128-29. Second, it thereafter issued an order denying Colbert's challenge, in which it *completely ignored* his argument regarding his right to have had counsel at the parole revocation hearing. *Id.* Third, in its brief to our Court in this matter, the Board glided past Colbert's aforementioned *statutory* right to counsel, focusing its argument regarding legal representation almost exclusively on the fact that he did not have a *constitutional* right to counsel, as well as on the Fayette County Office of the Public Defender's failure to comply with *its* statutory responsibilities. *See* Board's Br. at 11-14. While we are at a loss to understand how or why these mistakes occurred, it remains that Colbert was entitled to be represented by legal counsel at his parole revocation hearing, as well as that the hearing should not have taken place without the presence and involvement of such counsel or Colbert's knowing, intelligent, and voluntary waiver of that entitlement.

### III. Conclusion

In light of the foregoing analysis, we conclude that the Board's May 29, 2020 order was legally erroneous. As such, we vacate that order and remand this matter to the Board. The Board shall notify Colbert and the appropriate public defender's office, in order to ensure that Colbert is afforded the legal representation to which he is legally entitled, and shall hold a new revocation hearing for Colbert within 30 days, contingent upon confirmation that Colbert has either secured counsel or has executed a valid waiver of his right thereto.

_____
ELLEN CEISLER, Judge

7

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin Colbert,                          :
                    Petitioner          :
                                        :
        v.                              :    No. 654 C.D. 2020
                                        :
Pennsylvania Parole Board,              :
                    Respondent          :

# **O R D E R**

AND NOW, this 17th day of May, 2021, it is hereby ORDERED that the Pennsylvania Parole Board's May 29, 2020 order is VACATED. It is FURTHER ORDERED that this matter is REMANDED to the Board for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge