IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Wilhelm,                    :
              Petitioner            :
                                    :
    v.                              :  No. 602 C.D. 2021
                                    :  SUBMITTED: December 30, 2021
Pennsylvania Parole Board,          :
              Respondent            :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: February 1, 2022

        Petitioner Michael Wilhelm (Wilhelm) petitions for review of Respondent
Pennsylvania Parole Board's (Board) April 29, 2021 ruling, through which the
Board affirmed its January 14, 2020 decision to recommit Wilhelm as a technical
parole violator (TPV). We affirm.

                              **I. Background**

        On September 14, 2015, Wilhelm was sentenced by the Court of Common
Pleas of Allegheny County to an aggregate period of incarceration of three years,
seven months to nine years in state prison, after Wilhelm's probation was revoked
regarding two burglary charges and one charge of possession of an instrument of
crime. Certified Record (C.R.) at 1-2. Wilhelm was given credit for time served in
presentence detainment and was subsequently paroled by the Board on November
14, 2016. *Id.* at 2-8. At the time of his parole, the maximum date on Wilhelm's 2015
sentence was April 3, 2022. *Id.* at 8.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge
Emerita Leavitt became a senior judge on the Court.

Wilhelm repeatedly violated the terms of his parole over the next several years, with most of these violations due to his abuse of illicit substances. *See id.* at 17-23, 40, 45-47, 60-61. As a result, the Board twice recommitted Wilhelm as a TPV, once on September 6, 2017, and once on January 23, 2019. *Id.* at 21-23, 45-47. Wilhelm was paroled from his second TPV recommitment on September 19, 2019, at which point he was transferred to the Johnstown Community Corrections Center (Johnstown CCC).[2] *Id.* at 48-54. On November 10, 2019, Wilhelm declined to provide Johnstown CCC staffers with a urine sample. He was sent to his room as a result, and later admitted to the staffers that he had used benzodiazepine and methamphetamine. *Id.* at 62; *see also id.* at 108-09. As a result, Wilhelm was removed from the Johnstown CCC and the Board issued a warrant to commit and detain him on November 12, 2019. *Id.* at 55-56. That same day, Wilhelm also signed two documents: the first document is titled "Notice of Charges and Hearing" and contains the following, detailed description of the technical parole violations with which he had been charged:

> You are charged with the following:
>
> Technical Parole Violations:
>
> Condition #5(A)[:] Use [and/or] possession of controlled substance: you shall abstain from the unlawful possession or sale of narcotics and dangerous drugs and abstain from the use of controlled substances within the meaning of The

---

[2] "Community corrections center" is statutorily defined as "[a] residential program that is supervised and operated by the [D]epartment [of Corrections] in accordance with [Chapter 50 of the Prisons and Parole Code]." 61 Pa. C.S. § 5001. Per the Department of Corrections' administrative regulations, a "community corrections center" is a "minimum-security community-oriented facility operated or contracted by the Department for the purpose of facilitating special programs." 37 Pa. Code § 91.1. In addition, the Department of Corrections' administrative regulations also explain that "[c]ommunity corrections centers are residences in the community with custodial structure and strong emphasis on guidance and counseling. These centers serve those inmates who qualify and who should benefit from a gradual reintegration into society." 37 Pa. Code § 94.2.

Controlled Substance, Drug, Device[] and Cosmetic Act[, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101-780-144].

Supporting evidence: On 11/12/2019 you admitted to Agent Eckenrod[, Wilhelm's assigned parole agent, that] you had used methamphetamine and benzodiazepine's [sic] on 11/10/2019.

Condition #7: You shall comply with the special conditions imposed by the Board and with special conditions imposed by the parole supervision staff

Field imposed special condition: On 09/20/2019 you were issued a field imposed special condition stating that you must comply with all rules, regulations and recommendations of the Johnstown [CCC] program. Failure to successfully complete the [Johnstown] CCC program is a violation of your parole conditions.

Supporting evidence: On 11/12/2019 you were unsuc[c]essfully discharged from the Johnstown CCC for refusing to provide a urine [sample] on 11/10/[20]19 and continued poor adjustment. You failed to successfully complete the Johnstown CCC program.

*Id.* at 56. Wilhelm signed his name directly beneath this description. *Id.* The second document is a waiver form, through which he gave up his right to preliminary and parole violation hearings before the Board, as well as to counsel at those hearings, and admitted to two technical violations of his parole terms. *Id.* at 57-58. Specifically, these technical violations were "#5(A) Use of Controlled Substances – Methamphetamine and Benzodiazepine" and "#7 Field Imposed Conditions – Unsuccessful Discharge Johnstown CCC Program." *Id.* at 57-58. This form contains two typewritten statements in separate places on its second page. *Id.* at 58. The first reads as follows:

I have been advised of my rights to a preliminary hearing, a violation hearing and counsel at those hearings. I have also been advised that there is no penalty for requesting counsel, that free counsel is available if I cannot afford to retain counsel, and the name and address of the local

3

public defender. With full knowledge and understanding of these rights, I hereby waive my right to a preliminary hearing, a violation hearing and counsel at those hearings. I waive these rights of my own free will, without any promise, threat or coercion.

*Id.* at 58. The second states that "I knowingly, voluntarily and willingly admit to the violation(s) listed above. I understand and agree that this admission is binding and may only be withdrawn if I submit a written withdrawal to my supervising agent, within ten (10) calendar days of the date written above." *Id.* Wilhelm signed his name directly beneath each of these statements. *Id.*[3]

On January 14, 2020, the Board issued a decision through which it recommitted Wilhelm as a TPV for the aforementioned parole violations and ordered that he serve 12 months of backtime as a result. *Id.* at 83-85. Through this decision, the Board also directed that Wilhelm would be automatically paroled on November 12, 2020, unless he committed certain kinds of misconduct during the intervening time period, spent more than 90 days in restricted housing as a result of disciplinary infractions, or refused to complete mandated programming or work assignments. *Id.* at 84. On January 31, 2020, Wilhelm mailed an administrative remedies form to the Board, challenging the Board's January 14, 2020 decision on the following bases: he was never informed that he only had 10 days to rescind the signed waiver form; he was unaware of the specifics of the parole violations with which he had been charged until after he had signed the form; he had not received a copy of the forms he had signed until after that deadline had passed; and he had not refused to give a urine sample while at Johnstown CCC. *Id.* at 107-12. Notably, Wilhelm admitted therein to the illicit drug use with which he had been charged, and stated that he had signed the waiver form while under the impression that he was "being violated for

---

[3] Wilhelm also signed the two-page waiver form in one other spot: on the first page, underneath the section titled "Offender Rights at Board Hearing[.]" *See* C.R. at 56.

refusing to give the [urine] sample[,]" but had "[done] so without really reading [the form] word for word[.]" *Id.* at 109.

On September 9, 2020, Wilhelm's eligibility for automatic parole was rescinded, due to two prison misconducts he had received prior to that point. *See id.* at 86-89. On January 11, 2021, the Board formally modified its January 14, 2020 decision, by deleting the automatic parole provision and directing that Wilhelm be paroled no sooner than February 17, 2021, "upon condition that there are no further misconducts of any kind." *Id.* at 92-93.

On April 29, 2021, the Board issued a ruling that affirmed the January 14, 2020 decision (as modified). *Id.* at 116-17. Therein, the Board explained that

> [t]he waiver/admission form [Wilhelm] signed specifically indicates that [he] chose to [sign the form] of [his] own free will, without promise, threat or coercion and that [he] did so with full knowledge and understanding of [his] rights. This document also gave [him] ten calendar days to withdraw the admission. There is no indication that [he] withdrew the waiver/admission within that grace period. These facts reflect that [his] waiver/admission was knowing and voluntary. Therefore, the Board had sufficient evidence to revoke [his] parole based on the waiver/admission.

*Id.* at 116. This appeal to our Court followed shortly thereafter.

## II. Discussion[4]

Wilhelm challenges the Board's April 29, 2021 decision on a single ground,[5] namely, that he did not waive his right to Board hearings or admit to committing the

---

[4] "Our scope of review over actions of the Board is limited to determining whether the decision was supported by substantial evidence, whether an error of law occurred[,] or whether constitutional rights were violated." *Ramos v. Pa. Bd. of Prob. & Parole*, 954 A.2d 107, 109 n.1 (Pa. Cmwlth. 2008).

[5] Confusingly, Wilhelm also attempts to use his brief to attack another Board parole revocation action, *i.e.*, a ruling issued by the Board on October 23, 2020, which pertains to another
**(Footnote continued on next page…)**

5

aforementioned technical parole violations in a knowing, intelligent, and voluntary manner, because the Board failed to provide him with sufficient information prior to him signing the waiver form, in violation of 37 Pa. Code § 71.2.[6] Wilhelm's Br. at 30-33.[7]

We firmly disagree with Wilhelm.

> In order to effectuate a knowing and voluntary waiver in . . . Board cases, all that is required is for the Board to show that it followed its own regulations and provided the necessary information to the offender prior to the offender signing the written waiver form. *See Roblyer v. Pa. Bd. of Prob. & Parole*, . . . 609 A.2d 884 ([Pa. Cmwlth.] 1992) (waiver of counsel); Wile, Pennsylvania Law of Probation

---

administrative remedies form that Wilhelm had mailed on February 12, 2019. C.R. at 94-95, 100-01. Through that form, Wilhelm challenged the Board's January 23, 2019 decision, in which it had resolved Wilhelm's second instance of technical parole violations by recommitting him as a TPV to serve 9 months of backtime. *See id.* at 45-47, 94-95. To state the obvious, the Board's October 23, 2020 ruling is entirely separate from its April 29, 2021 ruling and is not part of the appeal that is currently before us. Therefore, we need not further address this portion of Wilhelm's appellate argument.

[6] The Board, at 37 Pa. Code § 71.2, details the procedures it must follow when charging a parolee with technical parole violations. This regulation also explains the parolee's due process rights during the revocation process, which include the right to counsel during the revocation proceeding; the right to a preliminary hearing to determine whether probable cause exists to believe the parolee committed a parole violation; and the right to a violation hearing to determine, based on the evidence presented, whether the parole violation occurred.

*Prebella v. Pa. Bd. of Prob. & Parole*, 942 A.2d 257, 260 n.1 (Pa. Cmwlth. 2008).

[7] The Board asserts that Wilhelm has waived this issue, because he did not raise it in his Petition for Review. Board's Br. at 6. In doing so, the Board ignores the fact that, per the Pennsylvania Rules of Appellate Procedure, "the omission of an issue from the statement [of objections in a petition for review] shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record." Pa. R.A.P. 1513(d)(5). Given that Wilhelm effectively raised this issue through his January 31, 2020 administrative remedies form, we conclude it has not been waived and will address it on the merits.

and Parole § 13.25 (2d ed. 2003). The waiver need not be effectuated in an "on the record colloquy." *See Coades v. Pa. Bd. of Prob. & Parole*, . . . 480 A.2d 1298, 1305 ([Pa. Cmwlth.] 1984) (waiver of counsel). Rather, . . . execution of the Board's form is sufficient. *See also Hill v. Pa. Bd. of Prob. & Parole*, . . . 492 A.2d 80 ([Pa. Cmwlth.] 1985) (waiver of counsel).

*Prebella*, 942 A.2d at 261. Wilhelm attempts to distinguish his situation by maintaining that his waiver was not knowing, intelligent, and voluntary, because

> he did not have time to read the form before signing it[,] . . . was not aware of the ten-day limitation on the period within which he could withdraw his waiver/admission[, and] did not receive a document bearing the details of the alleged violations until approximately two months after signing the document, when the withdrawal period had already expired.

Wilhelm's Br. at 30. Wilhelm also argues that he

> would not have admitted to a violation asserting that he had refused to provide a urine sample, as he indicates that he did provide a urine sample, but was not able to do so during the time period allotted. The Bureau of Community Corrections Resident Infraction Report does note that [Wilhelm] "self admits [to illicit substance use] during a urinalysis." [C.]R. [at] 68. As such, [Wilhelm] asserts that the allegations made relative to his violations include an untrue statement or misstatement of fact[, of which] he was not aware . . . when he signed the waiver/admission as the only statement on that form relative to Johnstown CCC was that he had been unsuccessfully discharged.

*Id.* at 30-31. Essentially, Wilhelm maintains that he "was not given sufficient notice under [37 Pa. Code §] 71.2(11)[,[8] because] the violation[s listed in the waiver form

---

[8] Section 71.2(11) reads as follows:
> Before the violation hearing the parolee or counsel shall be notified of the following:
> > (i) The charges, specifying the conditions of parole violated and setting forth the circumstances of the violations.

**(Footnote continued on next page…)**

were] not specific as to the facts alleged relative to the alleged refused urine sample." Wilhelm's Br. at 32.

There are a number of readily apparent problems with Wilhelm's reasoning. First, between the Notice of Charges and Hearing and the waiver form, the Board provided Wilhelm with a wealth of detailed information regarding the precise technical parole violations with which he was being charged, the rights he was giving up by foregoing hearings and admitting to the veracity of those charges, and the deadline for rescinding his waiver. Second, the Board recommitted Wilhelm as a TPV not only because he had refused to provide a sample for urinalysis, but also because, by his own admission, he would have been unable to pass that test due to his use of illicit substances. Third, Wilhelm admitted in his administrative remedies form that he had signed the waiver form while under the impression that he was "being violated for refusing to give the [urine] sample." C.R. at 109. Fourth, Wilhelm expressly stated in his administrative remedies form that he had not fully grasped the particulars of what he was admitting and waiving because he signed the waiver form "without really reading it word for word," *id.*, *not* because he did not have enough time to read that form. Finally, "[i]t was only after [his] opportunity [to

---

> (ii) The date set for the hearing and of the right to be heard by a panel.
> (iii) The right to speak, to have witnesses appear and to present documentary evidence.
> (iv) The right to cross-examine an adverse witness who appears at the hearing, unless the panel or examiner specifically finds good cause for not allowing confrontation.
> (v) The right to representation by counsel at the hearing, the right to free counsel, if the parolee is unable to afford to retain counsel, and the name and address of the public defender.
> (vi) That there is no penalty for requesting counsel.

37 Pa. Code § 71.2(11).

have Board hearings] passed and he was disappointed in the result that he sought to raise new facts contrary to those he previously put in the record. Essentially, he [sought] to impeach himself and to obtain a different disposition[.]" *Prebella*, 942 A.2d at 262. In short, there is nothing in the record that provides legal justification for overturning the Board's April 29, 2021 ruling. The Board fulfilled its responsibility to properly inform Wilhelm of the parole violation charges he faced and of the rights he was agreeing to waive. Finally, substantial evidence in the record supports the Board's determination that Wilhelm signed the waiver form in a knowing, intelligent, and voluntary manner.

### III. Conclusion

Therefore, in accordance with the foregoing analysis, we affirm the Board's April 29, 2021 ruling.

_____
ELLEN CEISLER, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Wilhelm,      :
     Petitioner  :
          :
  v.        : No. 602 C.D. 2021
          :
Pennsylvania Parole Board,  :
     Respondent :

## **O R D E R**

AND NOW, this 1st day of February, 2022, Respondent Pennsylvania Parole Board's April 29, 2021 ruling, through which it affirmed its January 14, 2020 decision to recommit Petitioner Michael Wilhelm as a technical parole violator, is AFFIRMED.

            _____
            ELLEN CEISLER, Judge