Mario A. Passaro, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Richard Lee Barnett, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole et al., Respondents.

Cumberland County Office of the Public Defender, Taylor P. Andrews, Public Defender, and Fulton County Office of the Public Defender, James Schall, Public Defender, Additional Respondents.

Submitted on briefs to President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR.

*Thomas M. Place,* for petitioner, Mario A. Passaro.

*Thomas M. Place,* with him *Richard Lee Barnett,* for petitioner, Richard Lee Barnett.

*Robert A. Greevy,* Assistant Attorney General, with him *Edward G. Biester, Jr.,* Attorney General, for respondent.

*Taylor P. Andrews,* for Amicus Curiae, Public Defender Association of Pennsylvania.

*John H. Broujos,* for Amicus Curiae, County of Cumberland.

*John R. Merrick,* for Amicus Curiae, Public Defender of Chester County.

*Louis M. Natali, Jr.,* First Assistant Defender, with him *Benjamin Lerner,* Chief Defender, for Amicus Curiae, Defender Association of Philadelphia.

34

OPINION BY PRESIDENT JUDGE CRUMLISH, January 9, 1981:

In these consolidated appeals from orders of the Pennsylvania Board of Probation and Parole, we must determine whether or not the county of conviction or incarceration is ultimately responsible for the provision of legal counsel during a parole revocation hearing. We must conclude that this responsibility properly lies with the county of incarceration.

I. *Passaro v. Pennsylvania Board of Probation and Parole,* No. 256 Miscellaneous Docket No. 2.

Mario A. Passaro, an indigent parolee/inmate convicted on January 17, 1975 in Fulton County, Pennsylvania, to a term of 1 1/2 to 5 years for burglary, was paroled from that conviction in September of 1976. While on parole, Passaro was arrested and charged with armed robbery and technical parole violations by the Mercer County authorities. Released for medical treatment in April of 1978, Passaro remained at large until November of 1978 when he was again arrested by the Centre County authorities and charged with attempted homicide, aggravated assault, recklessly endangering the life of another and possession of a deadly weapon. In May of 1979, he pleaded guilty to aggravated assault in Centre County and was sentenced to a term of 1 1/2 to 6 years at the State Correctional Institution in Camp Hill.

In June of 1979, Passaro was given a full hearing without counsel before the Pennsylvania Board of Probation and Parole (Board) for parole violations. He refused to participate in the hearing absent counsel, and upon leaving the hearing room, the Board ordered his recommittal as a technical parole violator. Later that month, Passaro requested a full Board revocation hearing which was held on July 31, 1979. Prior to that hearing, however, Passaro was informed

by public defenders of both Centre County, the county of conviction, and Cumberland County, the county of incarceration, that their offices would not represent him at his July 31st hearing. After that hearing, which was in fact held without counsel, the Board reaffirmed its commitment of Passaro as a technical parole violator and recommitted him as a convicted parole violator.

On September 14, 1979, Passaro filed a petition for review with this Court from the Board's August 16, 1979 order.

II. *Barnett v. Pennsylvania Board of Probation and Parole,* No. 302 Miscellaneous Docket No. 2.

Richard Lee Barnett is an indigent parolee/inmate convicted in Fulton County in February of 1976 to a term of from 1 1/2 to 4 years and paroled in November of 1977. While on parole, he was arrested and in February of 1979 was found guilty of robbery and again sentenced to a term of from 1 1/2 to 4 years in the State Correctional Institution at Camp Hill.

After the second arrest and conviction, the Board scheduled a parole revocation hearing for May 3, 1979. Barnett filed a petition for appointment of counsel before the Board, but neither counsel from the Public Defender's Office of Cumberland County, the county of incarceration, nor counsel from the Public Defender's Office of Fulton County, the county of conviction, appeared at the revocation hearing held on May 3, 1979 at Camp Hill. Following the hearing, Barnett was recommitted as a parole violator.

In September of 1979, Barnett was granted a new trial for the second arrest charge and again was found guilty in Fulton County on October 11, 1979. Because the conviction for which the May 3, 1979 recommitment hearing had been held, had been vacated, the

Board, in October of 1979, rescinded its May 1979 recommitment action. The Board, however, scheduled a new revocation hearing as a result of the verdict in the retrial. In the course of rescheduling the hearing, the Board sent a Notice of Charges and Hearing to Camp Hill to be forwarded to the Public Defenders of both the county of conviction and the county of incarceration to notify both of the approaching revocation hearing scheduled for December 11, 1979.

On December 3, 1979, the Public Defender of Fulton County informed the Parole Office at Camp Hill of his intention not to represent Barnett at the hearing on the theory that it was a matter outside the scope of his employment, but within that of the Public Defender of Cumberland County. Barnett then requested a continuance to the next month so that he could secure counsel for the hearing. On January 10, 1980, the Public Defender of Cumberland County, Respondent Taylor Andrews, informed the Board that his office would not represent Barnett at the revocation hearing on the grounds that such representation fell upon the Public Defender of the county of conviction. On February 4, 1980, the Board recommitted Barnett as a convicted parole violator following his uncounselled hearing at Camp Hill.

After receiving notice that the Public Defender of Fulton County would not represent him at the second Board hearing, Barnett petitioned this Court *pro se* to review the actions of the Board. Upon Board motions, this Court subsequently joined the Cumberland County Office of the Public Defender, the county of incarceration and the Fulton County Office of the Public Defender, the county of conviction as additional defendants. The Court then consolidated this matter with a similar suit brought by Mario A. Passaro.

## Discussion

Our Supreme Court in *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 17, 314 A.2d 842, 847 (1973), stated that "there can be no doubt that these [petitioners] are entitled to representation by counsel at the [parole revocation] hearings which must be held." Further, the Supreme Court, in *Commonwealth v. Tinson,* 433 Pa. 328, 249 A.2d 549 (1969), having earlier considered the availability of counsel for technical violators at parole revocation hearings, stated that "counsel is required at the hearing before the parole board to insure that *that hearing* is constitutionally valid." (Emphasis in original.) *Id.* at 334, 249 A.2d at 552. In addition, Section 71.4(3)(ii) of Title 37 of the Pennsylvania Code explicitly provides that a parolee has a right to counsel during a revocation hearing and that an indigent parolee has the right to free counsel.[1]

All parties agree that both Passaro and Barnett not only requested representation at the parole revocation hearing and did not receive it, but are fully entitled to free counsel provided by a Public Defender. However, there is little consensus upon whether the Public Defender of the situs of conviction[2] or the Pub-

---

[1] 37 Pa. Code §71.4(3) provides in part:

(3) Prior to the hearing set forth in paragraph (1) of this section, the parolee will be visited by a representative of the Board and notified, both orally and in writing, of the following:

. . . .

(ii) His right to counsel, his right to free counsel if he is unable to afford to retain counsel of his own choice and of the name and address of the public defender.

[2] Because of the complexity and widespread effect of this decision, this Court has received numerous amicus curiae briefs presenting compelling arguments for appointment of counsel from both the situs of conviction and the situs of incarceration. Submitting

lic Defender of the situs of incarceration[3] should be charged with representation. Section 6 of the Public Defender Act[4] merely provides that the "public defender" shall be responsible for providing counsel, while Section 71.4(5)(iv), 37 Pa. Code §71.4(5)(iv),[5] instructs the Board to give to the parolee the name

briefs supporting the situs of conviction approach were John H. Broujos, Esquire, the Solicitor to the Board of Commissioners of Cumberland County on behalf of the County of Cumberland, the site of the State Correctional Institution at Camp Hill in which Mario Passaro is presently incarcerated and Taylor P. Andrews of the Public Defender's Office of Cumberland County, on behalf of the Public Defenders' Association of Pennsylvania.

[3] Submitting briefs in support of representation from the situs of incarceration are John Merrick, Public Defender of Chester County, and Robert A. Greevy, Assistant Attorney General, on behalf of the Pennsylvania Board of Probation and Parole.

[4] Act of December 2, 1968, P.L. 1144, *as amended*, 16 P.S. §9960.6, provides:

(a) The Public Defender shall be responsible for furnishing legal counsel in the following types of cases to any person who, for lack of sufficient funds is unable to obtain legal counsel.

. . . .

(10) Probation and Parole proceedings and revocation thereof.

[5] 37 Pa. Code §71.4(5)(iv), provides:

(5) The revocation hearing shall be held before a quorum of the Board or, when the parolee has waived a hearing by the Board, before a Board member or an Examiner designated by the Board. The following procedures shall apply during the revocation hearing:

. . . .

(iv) . . . If the parolee now wishes to exercise his right to counsel, that fact shall be documented by the examiner and signed by the parolee. The Examiner shall then terminate the proceedings, have the parolee returned to custody, and initiate action to have the Revocation Hearing rescheduled promptly. The parolee shall also be advised of the name and address of the public defender of the county in which the parolee is confined.

and address of the Public Defender of the county of confinement before the actual hearing. However, this provision neither compels that Public Defender to provide counsel nor responds to the representation dilemma.

Initially, amici postulate that the Board should appoint counsel. However, the Superior Court, reversing a lower court ordering the Board to appoint counsel, held that "the lower court should have designated the Office of Public Defender to provide counsel and should not have ordered the parole board to appoint counsel." *Patterson v. Pennsylvania Board of Probation and Parole,* 215 Pa. Superior Ct. 532, 533, 258 A.2d 693, 694 (1969). Speaking further, the Court concluded that it could find

> no authority . . . for vesting in the Parole Board the duty and responsibility of appointment of counsel for indigents appearing before it. No machinery or administrative process is provided for such appointment by the Board and we, as well as the Board, are powerless to supply the same. We cannot counteract the legislature's pronouncement and place the responsibility of appointment of counsel on the Parole Board.

*Id.* at 534, 258 A.2d at 694-95.

Our review indicates that neither the Public Defender Act nor our Supreme Court's recent decision in *Bronson v. Pennsylvania Board of Probation and Parole,*[6] will serve to alter our agreement with the

---

[6] The Supreme Court, in the recently-decided case of *Bronson v. Pennsylvania Board of Probation and Parole,* Pa. , 421 A.2d 1021 (1980), stated "that indigent criminal defendants are entitled to state-appointed counsel to assist them in resisting the revocation of their parole." *Id.* at , 421 A.2d 1026. Since only the Board may in this case be considered the "state," there appears to be

Superior Court's position on Board-appointed counsel.[7]

Those favoring the county of conviction essentially argue that representation of a parolee can best be maximized when the defender is both near the parole violation site and able to efficiently conduct investigations and gather information necessary for an effective defense.[8] Amici further contend that representation by the county of incarceration's public defender's office would inequitably place a disproportionate share of the cost of counsel upon those nine counties in which state correctional institutions are located.[9]

Alternatively, proponents of the county of incarceration contend that the simple geographic proximity to both the parolee and the parole revocation hearing, held regularly by the Board at the institution of

---

some authority to hold that the Board may appoint counsel. However, because of the ambiguity of the language, the wording of the Public Defender Act, and the Superior Court's decision in *Patterson, supra,* appointment of counsel by the Board, though in the province of the legislature, is not considered by this Court to be a viable judicial alternative.

[7] The possibility of Board-appointed counsel is certainly a legislative possibility.

[8] Some interested parties further contend that in order for a defense to be even more effective, *all* Board hearings should be held in the county of violation. However, the suggestion that parole hearings only be held in the county of conviction using the same public defender office as in the underlying conviction, presents a logistical quagmire with security, financial, scheduling and personnel problems far in excess of any benefit that might be gained.

[9] The Commonwealth operates nine state correctional institutions located in the following counties: Cumberland (Camp Hill); Montgomery (Graterford); Mercer (Mercer); Westmoreland (Greensburg); Centre (Rockview); Allegheny (Pittsburgh); Lycoming (Muncy); Huntingdon (Huntingdon); and Luzerne (Dallas).

incarceration, makes this situs the logical choice. Amici further argue that there will not be a disproportionate financial burden placed upon the host counties who already possess the potential for shouldering a greater public defender burden than the remaining Commonwealth counties simply because of the Board's practice of holding hearings at the site of incarceration.

Clearly, this case of first impression, both uncharted by legislative language or intent and unexplored by judicial decision, poses for the petitioners and the Board alike an administrative dilemma. Section 71.4(2)[10] requires that a final revocation hearing be held within 120 days of a new criminal offense's final disposition while our Supreme Court's decision in *Rambeau, supra,* mandates the appointment of counsel when requested by the parolee. However, realizing it had no authority to appoint counsel, the Board attentively joined as defendants the defenders of both Cumberland and Fulton Counties to gain a full resolution of the problem.

Upon serious, careful, and considerate review of the melange of proffered legal tenets and policy arguments, we conclude the Public Defender of the county in which an indigent parolee is incarcerated shall, upon proper request, provide counsel for the Board's parole revocation hearings.

---

[10] 37 Pa. Code §71.4(2) provides, in part:

The following procedures shall apply in these cases in which the only violation charged is the conviction for a new criminal offense:

. . . .

(2) The hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or *nolo contendere* of the guilty verdict at the highest court level. . . .

Although it is not controlling, we are persuaded to this result by the implications of Section 71.4(5)(iv), which require advisement of the name and address for the confinement county's public defender, and our recent decision in *Dobson v. Jacobs,* 46 Pa. Commonwealth Ct. 548, 406 A.2d 1207 (1979). In *Dobson,* the public defender of the county of incarceration excused himself from a parole revocation hearing because of a client conflict of interest. Ruling on Dobson's request for the provision of counsel at a new revocation hearing, this Court relied on both *Patterson, supra,* and *Tinson, supra,* for the proposition that if the public defender of the county of incarceration was legally *unable* to represent a parolee in that county, then the public defender from an adjoining county should be notified by the parolee and accept the responsibility. *Dobson, supra* at 552, 406 A.2d at 1208. As a necessary corollary, we can conclude that if the public defender from the situs of incarceration is *legally able* to represent a parolee at a Board hearing, he or she should do so.

Implications aside, we are further and ultimately drawn to this conclusion by our primary concern for the parolee's right to effective counsel, lest his guaranteed constitutional rights give way to convenience, protocol and economics. To this end, we must honor that alternative which attends the best interests of justice and the individual. It is patently absurd, for whatever reason, to require defense counsel to travel the width and breadth of this Commonwealth, to necessitate the transportation of parolees and the attendant security problems, and to incur wholly unnecessary expenses in time and money when those same interests can be served by the incarceration site's public defender.

We are certainly not unmindful of the potential economic inequities to be borne by individual counties. However, given the fundamental rights to be protected, whether they be of the parolee or the people of this Commonwealth, the long-term aggregate costs to be borne for this process will be minimized by allowing the county public defenders to do their job. Should the proposed solution reach crisis proportions, legislation in the form of direction and/or funding can provide a solution.

ORDER

Accordingly, petitioners' parole revocations are hereby vacated with a direction that the Board promptly schedule new hearings. It is further ordered that counsel shall be furnished to each petitioner by the Office of the Public Defender in the county of the petitioner's present incarceration.

Judge WILLIAMS, JR. dissents.

CONCURRING AND DISSENTING OPINION BY JUDGE MENCER:

Because of considerations of convenience and practicality, I concur with the majority's conclusion that representation at parole revocation hearings for indigent inmates confined in state correctional institutions be provided by the public defender's office of the county of incarceration.

However, I respectfully dissent to the proposition that the costs incident to such representation should be borne by the counties in which the Commonwealth operates its nine state correctional institutions. I would cast my vote to place those costs upon the counties from which the indigent inmates were sentenced.

The Public Defender Act, Act of December 2, 1968, P.L. 1144, *as amended,* 16 P.S. §9960.1 et seq., requires that there shall be a public defender in each county,

44

except the County of Philadelphia,[1] and that among the duties of the public defender is the responsibility to furnish legal counsel to any person who becomes subject to the jurisdiction of a court of record in a county and who, for lack of sufficient funds, is unable to obtain legal counsel, in the following specific situation: "(10) Probation and parole proceedings and revocation thereof." Section 6(a)(10) of the Act, 16 P.S. §9960.6(a)(10).

Coupled with this duty, and perhaps with the instant problem in mind, Section 7 of the Public Defender Act, 16 P.S. §9960.7, provides:

> For cause, the court of common pleas may, on its own motion or upon the application of the public defender, the defendant, or person charged with being a juvenile delinquent, appoint an attorney other than the public defender to represent the person charged *at any stage of the proceedings*. The attorney so appointed shall be awarded reasonable compensation and reimbursement for expenses necessarily incurred, to be fixed by the judge of the court of common pleas sitting at the trial or hearing of the case and paid by the county. (Emphasis added.)

Thus, it seems to me that there is ample authority to place the costs of public defender representation at parole revocation hearings on the county from which the indigent inmate was sentenced. Accordingly, I would dissent to placing the costs on the counties in which the state correctional institutions are located until that solution would "reach crisis proportions."

---

[1] The Public Defenders Association of Philadelphia provides comparable representation for indigent defendants in the County of Philadelphia.