Thomas O'Hara, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

·Submitted on briefs November 15, 1984, to Judges ROGERS and WILLIAMS, JR. and Senior Judge KALISH, sitting as a panel of three.

*Bruce S. Miller,* Assistant Public Defender, for petitioner.

*Robert A. Greevy,* Chief Counsel with him, *Arthur R. Thomas,* Assistant Chief Counsel, *Jay C. Waldman,* General Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE WILLIAMS, JR., January 31, 1985:

Petitioner, Thomas O'Hara (O'Hara), petitions for review of an Order of the Pennsylvania Board of Probation and Parole (Board), dated March 5, 1982, which recommits him to prison as a convicted parole violator.[1] We affirm.

---

[1] Due to the extraordinary length of time which has expired since O'Hara originally filed his petition for review, we feel a chronology of the proceedings is in order. O'HARA'S original pro se Petition for Review was filed with this Court on February 19, 1982, two days following the in absentia Revocation Hearing at SCI-Pittsburgh and well *prior* to the Board's March 5, 1982 order. On February 22, 1982, we dismissed that appeal without prejudice to O'Hara's right to pursue administrative relief before the Board. *See* 37 Pa. Code §71.5(h) ; *Lantzy v. Pennsylvania Board of Probation and Parole,* 82 Pa. Commonwealth Ct. 626, 477 A.2d 18 (1984).

The facts of this case are somewhat complex and the record presents the following scenario. O'Hara was originally sentenced in 1975 by Judge ACKER of the Court of Common Pleas off Mercer County to a term of two and one-half to five years. That sentence was imposed as a result of O'Hara's pleading guilty to the charges of Simple Assault,[2] Terroristic Threats,[3] Felonious Restraint,[4] and Criminal Conspiracy.[5] This sentence carried an effective date of February 22, 1975 and had an original maximum term expiration date of February 22, 1980. After completing an initial term of imprisonment, the Board granted O'Hara parole effective April 20, 1978, at which time he was released from the State Correctional Institution at Rockview (SCI-Rockview).

During the early morning hours of November 8, 1979, O'Hara and a friend, James Knox, went to the

---

After receipt of O'Hara's answer and memorandum in response to that order, on March 11, 1982, we vacated our dismissal order and appointed the Allegheny County Public Defender to represent O'Hara as he was confined at SCI-Pittsburgh at that time. *See Passaro v. Pennsylvania Board of Probation and Parole*, 56 Pa. Commonwealth Ct. 32, 424 A.2d 561 (1981). The Allegheny County Public Defender entered his appearance on O'Hara's behalf on April 14, 1982 and requested an extension of time in which to file an Amended Petition for Review, which was granted. An Amended Petition for Review was filed on January 31, 1983. Subsequent to the filing of the Amended Petition for Review, O'Hara was transferred to SCI-Dallas in Luzerne County. On June 15, 1984, we vacated our prior appointment of counsel and appointed the Luzerne County Public Defender to represent O'Hara as Luzerne County was now the county of commitment. *Passaro.* The Board did not lodge its certified record with this Court until September 11, 1984 which finally allowed this matter to proceed to a decision on the merits.

[2] 18 Pa. C. S. §2701.

[3] 18 Pa. C. S. §2706.

[4] 18 Pa. C. S. §2902.

[5] 18 Pa. C. S. §903.

Hilton Hotel in Erie. O'Hara and Knox, both of whom had been drinking, became involved in an argument. The argument was broken up by a Hilton security guard but resumed a short time later when O'Hara tried to get Knox to leave. Knox told O'Hara that O'Hara would have to kill him to get him to leave. O'Hara then flipped a coin, took a pistol from his back pocket and shot Knox in the forehead. Knox died from the gunshot wound approximately sixteen hours later. Erie police apprehended O'Hara a short time after the shooting when his vehicle ran a red light. Arresting officers discovered a Raven .25 caliber automatic pistol under the driver's seat of O'Hara's vehicle.

O'Hara was charged with Murder,[6] Former Convict Not to Own a Firearm,[7] and Possession of an Instrument of Crime,[8] and confined at the Erie County Prison when he failed to post a $30,000 bond. The Board lodged its warrant the day of O'Hara's arrest but withdrew it on February 22, 1980—the original maximum term expiration date of the Mercer County sentence—when O'Hara was not tried on the new criminal charges by that time. The Board relodged its warrant against O'Hara on April 22, 1980 after he was convicted of Third Decree Murder and Possession of an Instrument of Crime in the Court of Common Pleas of Erie County. Sentencing was deferred.

O'Hara requested a full Board hearing which was originally scheduled for June 17, 1980 at the State Correctional Institution at Pittsburgh (SCI-Pittsburgh). O'Hara was personally notified of this hearing on June 10, 1980. The Board continued the June

---

[6] 18 Pa. C. S. §2502.

[7] 18 Pa. C. S. §6105.

[8] 18 Pa. C. S. §907.

17, 1980 hearing at the written request of O'Hara's counsel, Jay S. Nedell, Esquire, due to a scheduling conflict of Mr. Nedell. The Board rescheduled O'Hara's Revocation Hearing for July 22, 1980 at SCI-Pittsburgh. O'Hara was notified of this hearing and the Board contacted Mr. Nedell's office the day prior to the hearing and was assured that Mr. Nedell would be present for O'Hara's Revocation Hearing. Mr. Nedell failed to appear and O'Hara refused to participate in the hearing when the Board refused to grant a further continuance. The Board held the hearing in absentia following which it ordered O'Hara recommitted as a convicted parole violator, when available, to serve his remaining unexpired term.[9]

On September 9, 1981, O'Hara again appeared in Erie County Common Pleas Court and was convicted of the charge of Former Convict Not to Own a Firearm. O'Hara subsequently received a sentence of ten to twenty years on the Third Degree Murder conviction and a concurrent sentence of two and one-half to five years on the firearm conviction.

O'Hara wrote the Board on September 21, 1981 asking that the Board correct the ''injustice'' done to him when the Board refused to continue the July 22, 1980 Revocation Hearing and proceeded to hold that hearing in absentia. The Board treated O'Hara's letter as a request for administrative relief pursuant to 37 Pa. Code §71.5(h) which it granted by providing O'Hara a re-hearing for the April 1980 convictions.[10]

---

[9] O'Hara was not technically "available" to the Board at this time to commence service of his back time in that he remained incarcerated awaiting sentencing on the Murder conviction as well as awaiting trial on the charge of Former Convict Not to Own a Firearm.

[10] We have already held that the proper relief for a parole hearing held for an unrepresented parolee who has not waived

The Board scheduled O'Hara for a full Board Revocation Hearing at SCI-Pittsburgh on November 5, 1981 where it would consider the September 1981 conviction as well as the April 1980 convictions. When O'Hara's counsel failed to appear at that hearing, the Board granted O'Hara's request for a continuance. Hearings scheduled for December 15, 1981 and January 19, 1982 were continued by the Board due to O'Hara's unavailability resulting from Federal court appearances. On February 5, 1982, O'Hara was personally notified that his full Board Revocation Hearing was scheduled for February 17, 1982 at SCI-Pittsburgh. O'Hara's counsel again failed to appear. O'Hara refused to participate in the hearing and failed to provide any explanation to the Board as to why his counsel was not present or when his counsel would be available. O'Hara had previously been notified of his right to be represented by the local public defender if indigent.[11] O'Hara refused to participate in the hearing when the Board refused a further continuance. The Board held the hearing in absentia and, on March 5, 1982, ordered O'Hara recommitted as a convicted parole violator to serve his remaining unexpired term—one year, ten months—and extended

counsel is a new hearing where the parolee has the opportunity to be represented by counsel. *Sharp v. Pennsylvania Board of Probation and Parole*, 78 Pa. Commonwealth Ct. 441, 467 A.2d 1194 (1983) ; *Brown v. Pennsylvania Board of Probation and Parole*, 70 Pa. Commonwealth Ct. 597, 453 A.2d 1068 (1982).

[11] O'Hara was given a copy of the Board's "Notice of Charges and Hearing," PBPP-340, which has the right to free counsel if indigent contained in a statement of rights printed on the reverse. *See Coades v. Pennsylvania Board of Probation and Parole*, 84 Pa. Commonwealth Ct. 484, 497 n. 16, 480 A.2d 1298, 1305 n. 16 (1984). The record shows that O'Hara was personally given copies of the PBPP-340 on June 10, 1980, January 15, 1982, and February 5, 1982.

the maximum term expiration date of the 1975 Mercer County sentence to September 14, 1982.[12] O'Hara then petitioned this Court for review.

Before this Court, O'Hara raises two assignments of error on the part of the Board.[13] O'Hara contends the Board abused its discretion and violated his right to counsel by refusing to continue the February 17, 1982 hearing and conducting the hearing in absentia. O'Hara also contends that the Board failed to provide him with a timely Revocation Hearing since both the July 22, 1980 and the February 17, 1982 hearings were constitutionally defective due to lack of counsel which entitles him to a dismissal of the parole violations with prejudice. We shall address these contentions *seriatim*.

In reviewing a parole recommitment order of the Board, our scope of review is limited to a determination of whether the Board's order is supported by substantial evidence, is in accordance with law, and

[12] Section 21.1(a) of the Parole Act, 61 P.S. §331.21a(a), mandates that where a parolee is recommitted by the Board as a result of a new criminal conviction, the parolee receives no credit against his or her sentence for the time spent "at liberty" on parole. The fact that O'Hara's maximum term of his 1975 Mercer County sentence has long since expired does not render this appeal moot. The extension of O'Hara's maximum term by the Board has the effect of pushing back the effective date of O'Hara's new sentences and thereby pushing back O'Hara's parole eligibility date on the new sentences. *McSorley v. Pennsylvania Board of Probation and Parole*, 76 Pa. Commonwealth Ct. 257, 463 A.2d 1234 (1983).

[13] O'Hara also raised a challenge to the Board's jurisdiction over him as both of the new convictions occurred after February 22, 1980—his original maximum term—and the Board had dissolved its warrant and detainer on that date. However, since O'Hara did not address this contention in his brief, we consider it waived pursuant to Pa. R.A.P. No. 2119; *Commonwealth v. Colbert*, 476 Pa. 531, 383 A.2d 490 (1978).

whether any constitutional rights of the parolee have been violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Zazo v. Pennsylvania Board of Probation and Parole,* 80 Pa. Commonwealth Ct. 198, 470 A.2d 1135 (1984). We are also mindful that the Board bears the burden of proof of showing a violation of parole by a preponderance of the evidence. *Hossback v. Pennsylvania Board of Probation and Parole,* 80 Pa. Commonwealth Ct. 344, 471 A.2d 186 (1984).

O'Hara bases his contention that the Board violated his right to counsel upon our decision in *Brown v. Pennsylvania Board of Probation and Parole,* 70 Pa. Commonwealth Ct. 597, 453 A.2d 1068 (1982). In *Brown,* we held that the Board proceeds at its peril where it conducts a parole hearing for a parolee entitled to counsel who is unrepresented and expresses a desire to have counsel. *Id.* at 600, 453 A.2d at 1070. O'Hara also points to our decision in *Ruza v. Pennsylvania Board of Probation and Parole,* 73 Pa. Commonwealth Ct. 483, 458 A.2d 662 (1983), as further support of his contention. O'Hara's basic argument is that *Brown* and *Ruza* require the Board to grant *every* request of a parolee for a continuance to obtain counsel or secure the presence of counsel. This is an incorrect reading of those decisions and O'Hara's reliance upon them is misplaced.

It is now beyond question that under Pennsylvania law a parolee facing revocation of his or her parole is entitled to the assistance of counsel at hearings before the Board. *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973). It is also well-settled that the Board is not obligated to provide counsel for parolees nor does it have the power to appoint counsel for indigent parolees. *Passaro v. Pennsylvania Board of Probation and Parole,* 56 Pa. Com-

monwealth Ct. 32, 424 A.2d 561 (1981), *see also,* Sections 6(a)(10) and 7 of the Public Defender Act, 16 P.S. §§9960.6(a)(10) and 9960.7.

While the right of a parolee, facing revocation of parole solely on account of new criminal convictions, to assistance of counsel at the Board's revocation hearing does not always rise to the magnitude of a constitutionally-mandated right, *Gagnon v. Scarpelli,* 411 U.S. 778, 790-791 (1973); *Coades v. Pennsylvania Board of Probation and Parole,* 84 Pa. Commonwealth Ct. 484, 480 A.2d 1298 (1984), the Board must take reasonable steps to ensure that the parolee has an ample opportunity to retain counsel of his or her choice or secure the services of the public defender. *Brown.* Those reasonable steps include the granting of *reasonable* continuances to the parolee for the purpose of obtaining the services of counsel. *Id.* The question posed by O'Hara's challenge to the Board's actions is at what point may the Board refuse a parolee further continuances to obtain counsel and proceed with its revocation hearing without violating due process? We are of the opinion that due process considerations do not require the Board, or any other administrative agency, to grant a party a never-ending series of continuances for the purpose of obtaining counsel. *See Williams v. Unemployment Compensation Board of Review,* 86 Pa. Commonwealth Ct. 251, 484 A.2d 831 (1984) (denial of continuance to claimant to secure presence of counsel at unemployment compensation hearing).

It is a well-settled principle of administrative law that the power to grant or refuse continuances is an inherent power of an administrative agency which is subject to review only upon a showing of an abuse of discretion. *Brown,* 70 Pa. Commonwealth Ct. at 600, 453 A.2d at 1070; *Roche v. State Board of Funeral*

*Directors,* 63 Pa. Commonwealth Ct. 128, 437 A.2d 797 (1981); *Blackledge v. Pennsylvania State Police,* 62 Pa. Commonwealth Ct. 188, 435 A.2d 309 (1981). When it decides whether to grant or deny a parolee's request for a continuance to obtain counsel, the Board must balance the desirability of permitting the parolee additional time to secure the services or presence of counsel against the equally desirable public need for efficient and effective administration of the parole and correctional system. *Cf. Urquhart v. Lockhart,* 726 F.2d 1316 (8th Cir. 1984) (denial of further continuance to procure counsel in criminal prosecution); *United States ex rel. Carey v. Rundle,* 409 F.2d 1210 (3d Cir. 1969) (no abuse of discretion in denying criminal defendant additional time to secure the services of the counsel of his choice). The United States Supreme Court has indicated, in the context of a criminal prosecution, that only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for a delay to procure counsel will constitute an abuse of discretion and violates the right to counsel. *Morris v. Slappy,* 461 U.S. 1, 11-12 (1983); *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964). As a criminal defendant possesses a far greater right to counsel than does a parolee, *Gagnon v. Scarpelli,* this standard is more than adequate for reviewing the Board's actions to determine whether it abused its discretion.

We acknowledge that the parolee has an undeniably significant interest in obtaining the assistance of counsel at a Board revocation hearing. The parolee, after all, stands to lose the limited liberty which parole affords should the Board determine that he violated parole. In recognition of that significant interest, it is axiomatic that the Board must provide parolees with ample time to procure the services or

presence of counsel. While this means that the Board must allow reasonable continuances for the parolee to obtain counsel, *Brown,* it does not mean that the Board must grant the parolee *unlimited* continuances for the purposes of obtaining counsel, *see Williams.*

We recognize that there are other competing interests which may eventually outweigh a particular parolee's interest in a further continuance of his parole revocation hearing to obtain counsel. The Board, for example, has an interest in resolving pending parole violations in a timely and efficient manner. Other parolees who have parole violations pending have an interest and a right to a timely disposition of their matters. *Morrissey v. Brewer,* 408 U.S. 471 (1972). Where a parole hearing is continually rescheduled, it clogs the Board's hearing process and thereby delays hearings for other parolees awaiting disposition of their alleged parole violations. Finally, the Bureau of Corrections (Bureau) has an interest in having the status of accused parole violators finalized so that they may be properly classified by the Bureau and assigned to an appropriate facility. Until the Board acts on a parolee's violations, the Bureau keeps the parolee in the status of a parole violator pending (PVP). While the parolee is in PVP status, he is unable to get off the quarantine block at the institution, unable to get a prison job at the institution and is not eligible to participate in rehabilitation programs at the institution. Also, the Bureau cannot transfer an inmate in PVP status to another correctional facility other than a regional classification center.[14] These interests may, after a

---

[14] The Bureau operates three diagnostic and classification centers for male inmates which are located at SCI-Camp Hill, SCI-Graterford and SCI-Pittsburgh. The Bureau's diagnostic and classification for female inmates is located at SCI-Muncy.

period of time, outweigh a parolee's interest in obtaining a further delay of his parole revocation hearing in order to obtain counsel.

In order for the Board to properly weigh the various competing interests, the parolee bears some responsibility to provide the Board with sufficient information upon which the Board may determine the reasonableness of the continuance request. Where the parolee is unrepresented, that information should include what steps the parolee has taken, or is in the process of taking, to procure the services of counsel. The Board should also ensure that an unrepresented parolee has the address of the local public defender to whom the parolee may apply for representation if indigent. The Board's regulations require that each parolee be provided with this information *prior* to the scheduled hearing. 37 Pa. Code §71.4(3)(ii). If the parolee is represented by counsel and counsel is unable to attend the hearing, the parolee and counsel have an obligation to the Board to provide the reasons for counsel's absence and an approximate time when counsel and the parolee will be able to proceed. In close cases, the Board should give the parolee the benefit of the doubt and grant additional time to procure the services or presence of counsel. Of course, any delay attributed to the parolee being granted a continuance to obtain counsel or due to counsel's unavailability does not run against the Board for timeliness purposes. 37 Pa. Code §71.5(i).

Our review of the record satisfies us that the Board provided O'Hara with more than ample time to secure the presence of his counsel. The February 17, 1982 hearing was nearly *twenty-two* months after O'Hara's Murder conviction and *twenty* months after O'Hara's first parole hearing was scheduled by the Board. O'Hara was notified of the February 17, 1982 hearing

twelve days prior to the hearing, by personally receiving written notice on February 5, 1982. The Board had granted O'Hara three continuances, covering a period of *eighteen* months, solely for the purpose of procuring his counsel's presence. We also note that the last series of scheduled hearings were subsequent to our decision in *Passaro* which settled the question of which public defender has the responsibility under 16 P.S. §9960.6(a)(10) to represent indigent parolees at the Board's hearings. At the time of his last hearings, O'Hara was confined at SCI-Pittsburgh, in Allegheny County. O'Hara had the opportunity to apply to the local public defender for representation had he chosen to do so, after his counsel, Mr. Nedell, had repeatedly failed to show up at *any* of the Board's scheduled hearings in 1980, 1981 or 1982.[15] The fact that O'Hara failed to avail himself of this opportunity, preferring instead to continue to insist upon being represented by Mr. Nedell, does not turn the Board's denial of a further continuance into a violation or denial of his right to assistance of counsel. Two other continuances were granted by the Board due to O'Hara's unavailability.

---

[15] We hasten to point out that other than Mr. Nedell's letter to the Board of June 12, 1980, there is no further information in the record, after the July 1980 telephone call, that Mr. Nedell continued to represent O'Hara in his parole matter. Mr. Nedell did represent O'Hara at a parole preliminary hearing held at Erie County Prison on December 18, 1979. While there is no indication in the record of any continuing professional relationship between Mr. Nedell and O'Hara insofar as the parole matter is concerned, we do note that Mr. Nedell continued to represent O'Hara in the appeal of his murder conviction which was argued before the Superior Court on June 17, 1982, see *Commonwealth v. O'Hara*, 316 Pa. Superior Ct. 598, 463 A.2d 42 (1983), and in the appeal of his firearm conviction which was submitted on October 27, 1983. *See Commonwealth v. O'Hara*, 324 Pa. Superior Ct. 583, 472 A.2d 237 (1984).

Finally, neither O'Hara nor his counsel provided *any* reason to the Board for counsel's absence nor did they provide the Board with *any* estimate of when counsel would be available. Rather, in view of the record, we are satisfied that the Board respected O'Hara's right to counsel, provided him with ample time in which to procure the presence of his counsel, and that there was no abuse of discretion by the Board in refusing to continue with the sixth scheduled full Board Revocation Hearing held some twenty months after the first hearing was scheduled. We therefore hold that the Board did not deny O'Hara his right to counsel.

. We are also satisfied that O'Hara suffered no actual prejudice from the Board's denial of a further continuance on February 17, 1982. The evolving standard of review in the area of assistance of counsel at administrative hearings is that if the alleged errors are harmless and the party alleging those errors has not suffered any prejudice or had his rights materially affected, a reviewing court will not overturn the agency's decision nor order a remand. *See Finley v. Unemployment Compensation Board of Review,* 82 Pa. Commonwealth Ct. 175, 474 A.2d 431 (1984). The United States Supreme Court, in the area of criminal prosecutions, has held that for a defendant to show actual prejudice stemming from errors related to the right to assistance of counsel, the defendant is required to show that there is a reasonable probability that, but for the alleged errors relating to counsel, the result of the proceedings would have been different. *Strickland v. Washington,* U.S. , , 80 L.Ed. 2d 674, 698 (1984). As we have held O'Hara was not denied his right to assistance of counsel by the Board, we are convinced that he must show actual prejudice to be entitled to have the Board's or-

der vacated and the matter remanded for a new hearing. The record clearly shows that O'Hara has not met this burden.

The record shows that the only violation of parole O'Hara was charged with was sustaining serious new criminal convictions stemming from offenses committed while serving a parole term. *See* Section 21.1(a) of the Parole Act. O'Hara's new convictions were for Third Degree Murder, Possession of an Instrument of Crime, and Former Convict Not to Own a Firearm. The fact of those convictions has been conclusively determined by the criminal justice system and may not be re-litigated before the Board. *Morrissey,* 408 U.S. at 490; *Chapman v. Pennsylvania Board of Probation and Parole,* 86 Pa. Commonwealth Ct. 49, 56, 484 A.2d 413, 414 (1984); *see also Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983) (conviction of new crime automatic violation of probation). The presumptive range for the Third Degree Murder conviction alone carries a *minimum* range of thirty-six months, well above the twenty-two months O'Hara had remaining on his original Mercer County sentence. *See* 37 Pa. Code §75.2.

As the fact of the new convictions has already been established by the criminal justice system, the major purpose of a parole Revocation Hearing is to provide the parolee with an opportunity to present sufficient mitigation of or justification for his actions so as to convince the Board that, despite the new convictions, parole remains a viable means of rehabilitation. *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973); *Simmons v. Pennsylvania Board of Probation and Parole,* 74 Pa. Commonwealth Ct. 283, 459 A.2d 897 (1983). The record before us is devoid of mitigation or justification sufficient to over-

come O'Hara's serious new convictions.[16] Neither O'Hara nor his appellate counsel have raised or alleged any additional mitigating or justifying circumstances which would offset the new convictions. The fact that the fact finder of the criminal trial court convicted O'Hara of Third Degree Murder indicates that it rejected his claim of self-defense. Likewise, we can think of no circumstances where a parolee would be justified in possessing a firearm, let alone using one.[17] This is especially true of a parolee who was previously convicted of a crime of violence, as is the case of O'Hara whose initial convictions included an assault charge. Under these circumstances, the most able and eloquent defense counsel in the world could not have overcome O'Hara's new Murder and

[16] The record indicates that during an interview with his parole agent hours after the shooting on November 8, 1979, O'Hara, after being given his *Miranda* rights, admitted the shooting but claimed it was in self defense after Knox, the victim, threatened him with a knife. O'Hara also denied ownership or possession of the .25 automatic claiming that it was given to him only moments before the shooting by an unnamed individual at the Hilton. This information was evidently discounted by the criminal trial court in that O'Hara was convicted of Murder and the firearms offense. Witnesses also state that both O'Hara and Knox appeared drunk. O'Hara admitted drinking but denied he was drunk. We also consider these reasons as grossly insufficient mitigation or justification so as to render O'Hara's recommitment as inappropriate in light of the serious new criminal convictions.

[17] The record shows that O'Hara was arrested in June of 1979 at an Ohio Ramada Inn after the desk clerk noticed a pistol sticking out of his pants. The pistol allegedly belonged to O'Hara's employer who left it in the vehicle the employer allowed O'Hara to use. O'Hara claimed he found the weapon and took possession of it as he was afraid to leave it in the vehicle unattended. Ohio authorities apparently dropped the weapons charge and the Board allowed O'Hara to remain at liberty on parole. It was less than five months after this incident that O'Hara killed James Knox with another concealed handgun.

firearms convictions so as to convince the Board that he remained a good parole risk. We must therefore conclude that there is no reasonable possibility that the outcome of the February 17, 1982 hearing would have been different had O'Hara's counsel been present. Therefore, under the standard outlined in *Strickland,* as modified here for state parole hearings, O'Hara has not shown any actual prejudice and is therefore not entitled to a new hearing.

We now turn to O'Hara's final contention that the Board failed to provide him with a timely Revocation Hearing. By regulation, the Board is required to provide parolees with a Revocation Hearing within 120 days from a verdict or plea of guilty. 37 Pa. Code §71.4(2). Here, the Board provided O'Hara with a hearing on the Murder conviction on July 22, 1980, ninety-one days after the date of conviction. Although the Board granted O'Hara a re-hearing on that conviction, the July 22, 1980 hearing satisfies the timeliness requirement. *Brown.* As to the September 9, 1981 firearm conviction, the Board first scheduled a Revocation Hearing for November 5, 1981. That hearing, as well as two subsequently scheduled hearings, were continued due to either O'Hara's unavailability or that of his counsel. Periods of time where a parolee or parolee's counsel are unavailable are excluded from the computation to determine whether a parolee was given a Revocation Hearing within 120 days of conviction. 37 Pa. Code §71.5(i). Therefore, the time from November 5, 1981 through February 17, 1982 is excludible and the February 17, 1982 hearing is deemed to be held fifty-seven days after conviction. Both hearings were, therefore, timely.

Having found no abuse of discretion nor violation of constitutional rights, we will affirm the order of the Board.

374

## ORDER

AND Now, the 31st day of January, 1985, the Order of the Pennsylvania Board of Probation and Parole, at Parole Number 2177-K, dated March 5, 1982, which recommits Thomas O'Hara to prison as a convicted parole violator, is hereby affirmed.

Senior Judge KALISH concurs in the result only.