Theodore L. Carr, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs May 9, 1985, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Carol F. Munson,* Assistant Public Defender, with her, *Andrea Konow,* Senior Law Clerk, for petitioner.

*Arthur R. Thomas,* Assistant Chief Counsel, with him, *Robert A. Greevy,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, June 28, 1985:
Theodore L. Carr petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board). That order revokes his parole and recom-

mits him to prison as a convicted parole violator to serve fifteen months on backtime. We affirm.

While at liberty on parole, Carr allegedly sold cocaine to undercover state police agents on two occasions; the first on October 8, 1982 in Lewisburg and the second on June 23, 1983 in Sunbury. He was arrested on July 14, 1983 as a result of these activities and charged by both Union and Northumberland County authorities with the offense of Possession with Intent to Deliver Cocaine.[1] The Board learned of his arrest on August 5, 1983 but did not lodge a detainer against him due to the fact that the maximum term of his original parole sentence had expired on July 10, 1983. The Board did take administrative action to declare Carr delinquent for control purposes effective June 23, 1983, the date of his last alleged offense. As the Board did not lodge a detainer against him, Carr was able to secure his release from confinement by posting bail and remained free on bail until May 22, 1984.

On October 31, 1983, Carr appeared in Union County Common Pleas Court where he entered a plea of guilty to the charge of Possession with Intent to Deliver Cocaine and sentencing was deferred. On November 16, 1983, he entered a plea of guilty in Northumberland County Common Pleas Court to the charge of Possession With Intent to Deliver Cocaine with sentencing again deferred.[2] Carr's parole agent was

---

[1] Section 13(a)(30) of The Controlled Substance Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-113(a)(30).

[2] At his full Board Revocation Hearing held at SCI-Camp Hill on August 8, 1984, Carr asserted that he had been permitted to withdraw his guilty plea to the Northumberland County charges after his plea agreement was rejected by the trial court. Accordingly, at the time of his hearing, he remained untried on those charges and the Board only considered his new Union County conviction.

present in the courtroom when he pled guilty to the Northumberland County charge, however, the Board did not lodge its detainer nor file parole violation charges against him, but rather permitted him to remain free on bail.

On May 15, 1984, Carr was sentenced in Union County to a term of twenty-two to forty-eight months. The sentencing judge allowed him to remain free on bail to settle his affairs until May 22, 1984 at which time he surrendered himself at the Union County Prison. He was transferred to the State Correctional Institution at Camp Hill (SCI-Camp Hill) on May 25, 1984.

On June 15, 1984,[3] the Board charged Carr with violating his parole by sustaining new criminal convictions for acts committed while serving a parole term.[4] The Board afforded him a full Board Revocation Hearing at SCI-Camp Hill on August 8, 1984. Carr was represented by counsel from the Cumberland County Public Defender's Office who duly raised

---

[3] The Board argues that it first filed parole violation charges against Carr on July 3, 1984, the date of the PBPP Form 340, Notice of Charges and Hearing, for his August 8, 1984 Revocation Hearing. However, the record also contains Carr's request for a full Board hearing dated June 15, 1984 which is witnessed by the Institutional Parole Representative at SCI-Camp Hill. For the Board to have given Carr a choice as to the type of Revocation Hearing he desired, it must have filed parole violation charges against him by that date.

[4] Section 21.1(a) of the Act of August 6, 1941 (Parole Act), P.L. 861, *as amended*, 61 P.S. §331.21a(a), defines a direct violation of parole as where a parolee *commits* an offense while serving a parole term for which he is later convicted in a court of record. As both alleged offenses were *committed* prior to the expiration of Carr's original maximum term, July 10, 1983, the Board had jurisdiction to bring parole violation charges against him despite the fact that he was not arrested on those charges until after his original maximum term had expired.

objections to the timeliness of his Revocation Hearing as beyond the 120-day limit of 37 Pa. Code §71.4 (2). The Board overruled defense counsel's timeliness objections and subsequently, on August 27, 1984, ordered Carr recommitted as a convicted parole violator on the basis of the Union County conviction to serve fifteen months on backtime. The Board also extended the maximum term of his original parole sentence to July 17, 1986 pursuant to Section 21.1 of the Parole Act.[5] Carr filed an administrative appeal with the Board again contending that his Revocation Hearing was untimely. The Board denied that appeal and petition for review to this Court followed.

In this appeal, the sole issue presented for our resolution is whether the Board is required to provide a parolee with a Revocation Hearing within 120 days of a finding or plea of guilty where the Board has not yet lodged its detainer nor filed parole violation charges against the parolee. Of course, our scope of review of a Board recommitment order is limited to a determination of whether necessary findings are supported by substantial evidence, an error of law committed, or any constitutional rights of the parolee violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *O'Hara v. Pennsylvania Board of Probation and Parole,* 87 Pa. Commonwealth Ct. 356, 363-364, 487 A.2d 90, 94 (1985).

There is no question that one of the minimal due process rights to which parolees are entitled is the disposition of their parole violation charges within a reasonable time. *Morrissey v. Brewer,* 408 U.S. 471 (1972). By administrative regulation, the Board has

---

[5] Section 21.1(a) of the Parole Act mandates that where the Board recommits a convicted parole violator to prison, the parolee receives no credit against his parole sentence for time spent "at liberty" on parole.

determined 120 days to constitute a reasonable time in which it must dispose of parole violation charges. *See* 37 Pa. Code §71.4(2). The precise question which this appeal presents is at what point does this 120-day time period of 37 Pa. Code §71.4(2) commence for convicted parole violators?

In *United States ex rel. Burgess v. Lindsey*, 395 F. Supp. 404 (E.D. Pa. 1975), the Court held that the time period in which the Board has to provide a convicted parole violator with a hearing commences at the finding or plea of guilty. There, the Court specifically disapproved of the Board's prior practice of waiting until after sentencing to provide a parolee with a Revocation Hearing. Carr contends that *Burgess* is controlling here and commences the 120-day time limit on his Union County conviction on October 31, 1983 and that his August 8, 1984 Revocation Hearing was, therefore, untimely and the Board's order must be reversed. We disagree.

Our review of both the record here and the *Burgess* decision convinces us that the 120-day period of 37 Pa. Code §71.4(2) did not commence upon Carr's entry of his plea of guilty to the Union County charges on October 31, 1983 and that the facts here are significantly different from those present in *Burgess*. Specifically, in this case, the Board did not lodge a warrant and detainer against Carr after his guilty plea. Rather, he remained at liberty on bail until after he was sentenced on the new Union County conviction. In *Burgess* the parolee was confined for the nine-month period from his conviction to his final parole Revocation Hearing. Here, there was no deprivation of liberty by the Board. What *Morrissey* requires is the timely disposition of parole violation charges *once they are filed*. It is the deprivation of the parolee's liberty which occurs on detention or ar-

rest on the parole violation charges which triggers the constitutional protection. *Garfield v. Pennsylvania Board of Probation and Parole*, 71 Pa. Commonwealth Ct. 390, 392-393, 454 A.2d 1187, 1189 (1983). No such deprivation occurs until the parolee is taken into custody because of the parole violation. *Moody v. Daggett*, 429 U.S. 78 (1976). As the Board did not charge Carr with a violation of parole until June 15, 1984, the 120-day period of 37 Pa. Code §71.4(2) commenced on that date. The Revocation Hearing held on August 8, 1984 was within 120 days of that date and, therefore, timely.

Having found no errors of law committed by the Board nor any constitutional rights of the parolee to have been violated, we shall affirm the Board's recommitment order.

### Order

And Now, this 28th day of June, 1985, the order of the Pennsylvania Board of Probation and Parole No. 6534-K, dated October 25, 1984, which denied administrative relief to Theodore L. Carr, is hereby affirmed.